**McKEE DOOR COMPANY, Plaintiff-Appellee,**

v.

**FOREST DOOR COMPANY, Inc., Defendant-Appellant.**

**No. 13046.**

United States Court of Appeals Seventh Circuit.

Dec. 6, 1960.

Martin Bogot, Chicago, Ill., Edwin T. Bean, Buffalo, N. Y., Charles G. Chester, Chicago, Ill., Bean, Brooks, Buckley & Bean, Edwin T. Bean, Jr., Buffalo, N. Y., Martin, Craig, Chester & Sonnenschein, Chicago, Ill., for appellant.

Thomas F. McWilliams, Chicago, Ill., Mann, Brown & McWilliams, Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, KNOCH, Circuit Judge, and GRUBB, District Judge.

HASTINGS, Chief Judge.

McKee Door Company, plaintiff-appellee, brought this action against Forest Door Company, Inc., defendant-appellant, charging infringement of Claims 1, 2, 3 and 6 of its McKee Patent No. 2,703,141 dated March 1, 1955. Defendant answered in denial and asserted invalidity. The overhead doors sold by defendant and alleged to infringe were manufactured by Morrison Steel Products, Inc. (Morrison), of Buffalo, New York, which assumed and paid for the defense of this litigation.

Following a bench trial, the district court entered findings of fact and conclusions of law favorable to plaintiff and a judgment holding the claims in issue to be valid and infringed, enjoined further infringement and referred the matter to a Master for determination of plaintiff's damages. This appeal followed.

The parties agree that the principal issue before us is whether the trial court erred in concluding that the differences between the subject matter sought to be patented in the McKee patent and the prior art are such that the subject matter as a whole would not have been obvious at the time the invention was made to a person having ordinary skill in the art to which such subject matter pertains. In the main, therefore, this appeal is limited to the narrow question of obviousness in view of the prior art.

There is also a related error based upon the finding that the patent claims in issue were infringed by the accused structures. However, defendant concedes that if the finding of validity is sustained, the McKee patent is infringed by the Morrison device.

Plaintiff is the owner of the patent in suit by assignment. The patent application (Serial No. 637,131) was filed December 24, 1945. All the claims were rejected by the Patent Office as not patentable over combinations of the teachings of four prior art United States patents cited in the application. Thereafter, pursuant to 35 U.S.C.A. § 145, suit was filed in the United States District Court for the District of Columbia by the inventor and plaintiff-assignee against the Commissioner of Patents. The complaint alleged that the Patent Office was in error in refusing to grant a patent upon the McKee application and sought a judgment authorizing issuance of the patent. After a trial in that court before the Honorable F. Dickinson Letts, findings of fact and conclusions of law favorable to plaintiffs were entered by Judge Letts with a judgment authorizing the granting of letters patent to plaintiffs. The patent was issued on March 1, 1955.

The application recites that the "invention relates to improvements in what is

commonly known as overhead doors, extra clearance overhead doors and vertical lift doors, designed to close and provide openings in garages, service stations, industrial buildings, warehouses and the like, especially where a tight closure is desired. The doors are formed of panels or other design sections, which are hinged together and provided with guide rollers and tapered guide tracks. When opened, the door moves upwardly and away from the frame of the doorway to conveniently provide the maximum opening for entrance or exit to the building."

The application further states that the object of the invention is "to provide a simple and effective adjustable roller or guide bracket in combination with a taper track construction whereby the door regardless of height of sections, can be properly and accurately spaced so as to press the door firmly against the frame of the doorway at all points to give a perfectly tight fit when the door is closed and in which such contact is quickly relieved when raising the door in order to reduce frictional resistance so that the door can be opened and closed with minimum effort."

Claim 1 is typical and reads:

"In a sectional overhead door structure having a doorjamb, substantially vertically disposed tracks inclined relative to the doorjamb, said tracks being closer to the plane of the doorjamb at the bottom than at the top, and a sectional door movable along and guided by said tracks and adapted to engage said jamb; a plurality of spaced brackets each comprising an anchor portion secured to the door, a guide portion having laterally offset means [rollers] movably to engage a track, said guide portion being adjustably mounted on said anchor portion for movement to different fixed positions whereby the distance between said door and said offset means may be varied, and means for holding said guide portion in adjusted position on said anchor portion."

The findings of fact are not contested and reflect the following relevant factual situation. For a period from at least 1928 to 1945 plaintiff and five of its competitors were the principal producers of overhead panel doors. The industry had been unable to solve certain problems encountered in the various doors on the market. These problems were properly summarized by the trial court in its Finding 19, as follows:

"(a) Friction between the door panels and the door stop when vertical tracks were used and the doors were installed with an initial snug fit.

"(b) Expensive installation problems of tapered stops and tapered strips, and at times the tapering of the side edges of the door panels to avoid friction and yet achieve a snug fit upon closure.

"(c) The lack of any ready adjustability after a snug fit door installation when vertical tracks were used.

"(d) The necessity for fabricating and stocking many different size fixed brackets and the consequent expense attributed thereto when inclined tracks were used to avoid the friction problem.

"(e) The limitation with respect to the use of varying panel heights and the height of door openings with the use of inclined tracks, unless a very large number of fixed distance brackets were used in association with an inclined track."

It was clearly shown that the improvement disclosed by the McKee application afforded a remedy for defects in doors of this type and solved the foregoing problems which had confronted the overhead door industry for many years and produced new and beneficial results never before attained. McKee obtained these results by a new combination and arrangement of known elements. He accomplished this through a combination of an inclined track with an anchor portion to be secured to the rear of a door

panel with a guide portion carrying roller means adjustably mounted with a clamp on the anchor portion.

Finding 6 adequately describes the Mc-Kee improvement as follows:

"6. McKee Patent No. 2,703,141 relates to improvements in overhead vertifical lift doors, and this patent discloses an overhead door structure formed of hinged panels adapted to abut a doorjamb or door stop. The door is movably guided from open to closed positions by guide means associated with an inclined track. The panels of the door have secured thereto at the upper inner side edges brackets which comprise an anchor portion secured to the door panel and a guide portion adjustably mounted on the anchor portion. The guide portion carries an offset roller to engage the inclined track. The guide portion is adjustably mounted on the anchor portion, permitting movement of the guide portion to different fixed positions whereby the distance between the inner face of the door and the roller means may be varied. This permits the use of a single size bracket to meet all of the varying distances between the door and the inclined track. There is also included in the bracket a clamping means in the form of a nut-and-bolt arrangement to secure the guide portion to the anchor portion in any selected adjusted position."

With the McKee type of construction it was clearly shown that the inclined track may be used to eliminate friction between the outer edges of the door panels and the doorjamb, but without requiring the use of a number of different size brackets. One size bracket may be used in any position along the inclined track.

Further, as McKee demonstrated, installation was easily accomplished; it became possible to maintain the initial snug fit of the door by a simple adjustment of the bracket; and the cost of manufacturing and stocking many different size brackets was sharply reduced. The invention was widely accepted by the trade and met with substantial commercial success.

Defendant relies upon the following patents:

| | | |
|---|---|---|
| Lawrence | 313,085 | Issued March 3, 1885 |
| Dautrick | 1,724,995 | Issued Aug. 20, 1929 |
| Headley | 1,857,756 | Issued May 10, 1932 |
| Bittorf | 1,974,147 | Issued Sept. 18, 1934 |
| Johnson | 1,983,856 | Issued Dec. 11, 1934 |
| Smith | 2,171,194 | Issued Aug. 29, 1939 |
| Kiesling | 2,015,478 | Issued Sept. 24, 1935 |

All these patents except Kiesling were cited by the Patent Office and were before Judge Letts in the suit against the Commissioner of Patents. Judge Letts made specific findings with respect to Lawrence, Dautrick, Headley and Johnson and found invention over the prior art.

In the instant case Judge Igoe considered all the above listed patents and made specific findings as to each of them, including Kiesling, and independently reached the same conclusion as Judge Letts.

The parties agree that the patent in suit shows the combination of the inclined track found in Dautrick with the adjustable bracket taught in Headley, leaving us with the question of obviousness.

We approve the trial court's description of these two prior art patents set out in its Findings 33 and 34, as follows:

"33. Dautrick Patent No. 1,724,-995 discloses a panel overhead door in association with an inclined track. This patent has been referred to

earlier in these findings as showing the type of construction made and sold for many years by Overhead Door Corporation. As indicated earlier, the brackets used are fixed distance brackets having usefulness only in a particular portion of the inclined track. They have no ready adjustability at installation and the structure provides for no adjustability after installation. This patent merely shows a prior art structure with the problems involved in manufacturing and stocking many different size brackets.

"34. Headley Patent No. 1,857,756 shows a panel overhead door using vertical tracks. Figure 4 of this patent shows a spring-loaded roller arrangement adapted to provide a snug fit between the door stop and the lower door panel. Figure 5 shows an upper bracket also adapted to provide a snug fit between the door panel and the door stop. Figure 6 shows an intermediate adjustable bracket which in use can be utilized only for securing a snug fit between the intermediate panels and the door stop. The testimony establishes that with the Headley construction utilizing a vertical track, a snug fit will be achieved between the door stop and the door panels which will result in substantial friction between the door panels and the door stop, both in closing and opening operations. The testimony establishes that the Headley construction was not made and sold commercially."

Defendant urges in the instant case that the Kiesling patent, not before the Patent Office or Judge Letts, requires a finding of invalidity. We quote with approval from the trial court's Findings 38 and 39 on this proposition:

"38. It has been suggested by Defendant that Kiesling Patent No. 2,015,478 if presented to Judge Letts would have resulted in a finding that McKee Door Company was not entitled to the patent which it sought in the litigation against the Commissioner of Patents. This patent shows an overhead door structure using an inclined track with a single bracket usable in five specific locations along an inclined track. Mr. Harsch, Vice President in Charge of Engineering for Morrison Steel Products, Inc., admitted that the Kiesling Patent has very limited usefulness; that it could be used only in specific locations on an inclined track; and that it could not be used as a substitute for the Morrison bracket because of the limitations inherent in its construction. Mr. Harsch also admitted that the Kiesling bracket and roller assembly was a very poor construction.

"39. Plaintiff's Exhibit 24 is a graphic illustration of the non-usability of the Kiesling bracket and roller assembly as compared with either the McKee or Morrison adjustable brackets in combination with an inclined track. This Exhibit shows, partly in full scale and partly in half scale, instances in which adjustable brackets of the McKee or Morrison type might be usable in comparison with the usefulness of the Kiesling bracket. This Exhibit shows that throughout the full length of an inclined track, the Kiesling bracket may be used only in specific locations and for specific panels, but that the Morrison and McKee brackets may be used substantially throughout the length of an inclined track. The testimony also shows that as illustrated the Kiesling bracket could not be made commercially to be useful for door heights in excess of eight feet, but that frequently Morrison and McKee use brackets of their own construction for door heights in excess of eight feet. There is no evidence that the Kiesling bracket and roller assembly was produced commercially, and both Mr. McKee and Mr. Harsch testified that this structure could not accomplish the advantages

present in both the McKee and Morrison overhead door structures."

Finally, with reference to the facts, we are convinced that the trial court correctly summarized the McKee combination in its Findings 40 and 41, as follows:

"40. Mr. Harsch admitted that he could point to no prior art patent which shows the combination of the adjustable bracket of the McKee Patent with an inclined track for the purpose of utilizing a single size bracket to meet all conditions encountered in the use of an inclined track.

"41. The invention by McKee of the combination of the inclined track with an adjustable bracket comprising an anchor portion to be secured to the rear of a door panel with a guide portion carrying roller means adjustably and clampingly mounted on the anchor portion solved many problems which had confronted the overhead door industry for many years and thereby fulfilled a long-felt want."

We find no basis for concluding that the Kiesling patent anticipated the McKee patent. 35 U.S.C.A. § 102. We have reached the inescapable conclusion, based on our study of the prior art in light of the facts found by the trial court, that the McKee combination of known elements produced new and improved results which solved many of the problems that had perplexed the overhead door industry for years.

■ Defendant failed to discharge its burden of proving a want of novelty. Paragon-Revolute Corporation v. C. F. Pease Company, 7 Cir., 1957, 239 F.2d 746, 748.

Since it has been determined in this case, under the facts, that there was an improvement over the prior art and that there is the required element of novelty in the teaching of the patentee, we now look to see whether the district court applied the correct legal criteria, 35 U.S. C.A. § 103, to the factual determination it made. Armour & Co. v. Wilson & Co., 7 Cir., 1960, 274 F.2d 143, 156.

Under these standards, we hold that the trial court correctly determined the issue of obviousness favorable to plaintiff in finding there was patentable invention. Its Conclusion of Law 3 squarely meets the issue in the following language:

"3. Defendant asserts that the claims in issue of the patent in suit are invalid and void as not constituting an invention over the cited prior art. Consideration has been given to Title 35 U.S.C., Section 103, and on the defense of invalidity the criteria of validity to be applied is that set forth in Section 103. The Court finds, as a matter of law, that the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would not have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Applying the criteria of Section 103, this conclusion of law is reached because the overhead door industry for many years, although confronted with specific problems referred to in the preceding Findings of Fact, did not, prior to the McKee invention, find a solution to these problems."

Our resolution of the issue before us is buttressed by the showing that on March 9, 1955 Morrison initiated a patent application on its overhead door. On May 11, 1955, Morrison was notified by McKee of the issuance of its patent and thereafter elected to prosecute claims drawn to inventions other than the combination of the adjustable bracket and inclined track. Subsequently, Morrison was issued several *foreign* patents drawn to the McKee combination. Morrison is now in the anomalous position of urging the invalidity of that which it formerly sought for itself in the United States and on which it now claims foreign protection.

Further, we have been favorably impressed with the finding of invention by two district judges in separate independent actions.

Having found the patent in suit to be valid, under the posture of this case we hold that the trial court properly found infringement by the Morrison accused structure.

The judgment of the district court is Affirmed.

Duffy, Circuit Judge, dissented.