Edward A. ZEGERS, Plaintiff-Appellee,

v.

ZEGERS, INC., Defendant-Appellant.

No. 15444.

United States Court of Appeals
Seventh Circuit.

July 11, 1966.

Rehearing Denied Aug. 16, 1966.

Thomas F. McWilliams, Chicago, Ill., for defendant-appellant.

Daniel V. O'Keefe, Matthew C. Thompson, Marzall, Johnston, Cook & Root, Chicago, Ill., for plaintiff-appellee.

Before KNOCH, KILEY, and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Zegers, Inc., an Illinois corporation, appeals from a judgment of the district court in an action for patent infringement brought by Edward A. Zegers as the owner of United States Letters Patent No. 3,058,176, which issued October 16, 1962 on an application filed April 15, 1959. The district court held claims 1, 3, 4, 5, and 6 valid and infringed by Zegers, Inc. and ordered an injunction and an accounting.[1] The principal questions presented relate to the alleged invalidity for obviousness, under 35 U.S.C. § 103, of two distinct and admittedly novel and useful features of the patent.

In order to place the subject matter of the patent in suit in the proper context, the relationship of the parties and prior patent litigation between them will be discussed briefly. The plaintiff and the defendant are competitors in the sale of combination sash balance and weather-strip units and clips for mounting such units in window frames. Edward A. Zegers was formerly employed by the defendant, Zegers, Inc., in which his brother Henry was the principal shareholder, but left that employment in 1955 and organized a competing operation.

In 1959 Zegers, Inc. brought suit against Edward A. Zegers, doing busias Precision Weatherstrip Company, for infringement of United States Letters Patent No. 2,869,184 owned by Zegers, Inc. The district court held the patent valid and infringed, and its decision was affirmed on appeal.[2] Zegers, Inc. v. Zegers, 299 F.2d 769 (7th Cir.), cert. denied, 369 U.S. 889, 82 S.Ct. 1163, 8 L. Ed.2d 289 (1962). In that suit the inventive disclosure of the Zegers, Inc. patent was the concept of releasably or demountably securing combination sash balance and weatherstrip units to a window frame or jamb through the use of flat metal clips with hooked ends, nailed or stapled in place in the jamb, whereby metal weatherstrip could be readily attached to or removed from the window frame by flexing the weatherstrip to engage or disengage the hooked ends of the clip.[3] In the window structure claimed, four of these flat, hooked clips were secured to the jamb to receive a pair of the combination sash balance and weatherstrip units. The weatherstrip units themselves were elongated strips of resilient material with track means to guide the sash and with flat, laterally-extending or projecting side edges. The laterally-extending side edges were inserted into or removed from the hooked ends of the clips by the simple expedient of flexing the units on their longitudinal axes to reduce their relative overall width. The clip device of the Zegers, Inc. patent effected great savings to millwork companies in the installation and maintenance of window units.[4]

---

1. The injunction and accounting were stayed pending this appeal.

2. Edward A. Zegers is presently enjoined from any infringement of patent No. 2,-869,184.

3. See illustration in appendix.

4. In the earlier *Zegers* case we stated:
   [I]t has become the general custom of millwork companies to deliver window units, complete with weatherstrip-

The patent in suit relates to the same general subject matter as the earlier-litigated Zegers, Inc. patent. Patent No. 3,058,176, however, discloses two features not present in the Zegers, Inc. window structure.[5] The first feature, disclosed in claims 1, 3, and 4 of the patent, is the concept of using "flanged" weatherstrip units with clips and providing slots in the flanged units to receive the hooked ends of the clips.[6] Flanged weatherstrip is a commonly used weatherstrip which differs from the weatherstrip used in connection with the clip of the earlier Zegers, Inc. patent only in that it has thin metal extensions (flanges) perpendicular to the jamb-overlying portion which serve as the outer guides in a channel to guide the sash. Ordinarily this type of weatherstrip could not be used with hooked-end clips. As stated by the district court, "The plaintiff's invention consists of slotting the junction of the flange and the jamb-overlying portion so that the hooks of the clip can fit over the metal lying on the jamb, in the same way that they fit over the thin metal edge of the other type of weatherstrip."

The second novel feature of the patent in suit, disclosed in claims 5 and 6, is the concept of bending the center portion of the clip to form a channel and adding metal barbs or outwardly-pressed teeth so that the clip may be manually pressed into a slot in the window jamb called a "dado" groove, the teeth engaging the sides of the groove, thereby eliminating the necessity of nailing the clips in place.[7] A dado groove is a small cut or slot in the center of the jamb running its entire length. Dado grooves have long been provided in window jambs to receive pieces of wood called "parting stops" which, among other things, serve to separate the sashes from each other. While dado grooves are unnecessary with metal weatherstrip, jambs are still generally provided with such grooves and the press-in feature of claims 5 and 6 takes advantage of them.

## I. *The slotted-flange feature*

The novelty and utility of slotted flanged weatherstrip and the infringement of claims 1, 3, and 4, if valid, were conceded by Zegers, Inc. in the district court. The only issue presented was whether providing slots in flanged weatherstrip to receive the hooks of clips secured to window frames would have been obvious to a person having ordinary skill in the art.

Both the hooked-end clips and flanged weatherstrip were old in the art. Flanged weatherstrip had been in use for many years; clips had been in use during the period between their conception and reduction to practice by Zegers, Inc. in early 1957 and Edward A. Zegers' idea of slotting the weatherstrip in January 1959. The evidence showed that Zegers, Inc. sold its flat nail-on clips for use with flangeless weatherstrip simul-

---

ping, to a job site. Prior to the invention of the patent in suit, these units were nailed into place. Thus there was no convenient way to remove the unit during painting, plastering or reglazing operations. Paint, plaster or varnish falling on the metal weatherstrip hindered its operation. When the units were nailed into place, removal required the use of tools and frequently damaged the light guage metal unit. These problems, in existence for many years, have been solved by the invention of the devices disclosed by the patent in suit * * *. 299 F.2d at 770.

5. See illustration in appendix.

6. Claim 1 describes a flanged weatherstrip unit with a single slot to be received by the hook of a mounting clip. Claim 3 is identical to Claim 1 except for its reference to two slots, one at the base of each of two flanges in a weatherstrip unit, disposed to be received by the hooks of a mounting clip. Claim 4 identifies a combination of the flanged weatherstrip with slots and a mounting clip with hooks. None of these claims describes the type of mounting clip to be used with the slotted weatherstrip, except that the clip must have hooks.

7. Claims 5 and 6 are substantially alike. Neither claim describes the type of weatherstrip unit to be used with the clip except that it must have a lip to be received by the mounting clip.

taneously with various lines of flanged weatherstrip (having the same general uses as flangeless weatherstrip) for approximately two years without discovering a method of using them together. The evidence further showed that on one occasion Zegers, Inc. had unsuccessfully attempted to mount flanged weatherstrip to a clip by using a type of clip which engaged the back of the weatherstrip unit.

On the other hand, testimony was introduced indicating that little or no interest in using flanged weatherstrip with the clip of the Zegers, Inc. patent had ever been expressed. In this connection, the actual conception of the idea of slotting flanged weatherstrip by Edward A. Zegers is illuminating. In January 1959 the plaintiff met at his plant with two customers of considerable experience in the millwork business and showed them a sample of his new press-in clip. The customers at that time were using flanged weatherstrip and had never seen clips for use with any kind of weatherstrip. When the plaintiff finished explaining his new clip to them, the customers remarked that it was a good idea, but that they could not use it because they were using, and preferred, flanged weatherstrip. The plaintiff's almost immediate rejoinder was that flanged weatherstrip could be adapted for use with his clip. He proceeded to prove his point by punching slots in a sample piece of flanged weatherstrip found in the shop and inserting the hooked ends of the clip into the slots

The district court found that the defendant failed to satisfy its burden of presenting "clear and cogent" evidence of obviousness to rebut the presumption of validity of the patent. In addition, the district judge relied upon the fact that "no one had thought to use the clip with [flanged] weatherstrip until the plaintiff did so." We are of the view that slotting the flanged weatherstrip would have been obvious to anyone with ordinary skill in the art who had occasion to consider the possibility of using flanged weatherstrip with hooked-end clips and that therefore

claims 1, 3, and 4 of the patent are invalid.

■■ There is no doubt, as the plaintiff has reminded us, that the fact that the solution to a problem is simple, or appears so, when viewed in retrospect, does not mean the solution was obvious when it was made, and that courts must guard against the exercise of hindsight in assessing the obviousness of a given improvement in the art. AMP Inc. v. Vaco Products Co., 280 F.2d 518 (7th Cir.), cert. denied, 364 U.S. 921, 81 S.Ct. 286, 5 L.Ed.2d 260 (1960); Charles Peckat Mfg. Co. v. Jacobs, 178 F.2d 794 (7th Cir. 1949), cert. denied, 339 U.S. 915, 70 S.Ct. 575, 94 L.Ed. 1340 (1950). But at the same time, the application of section 103 in a manner consistent with rewarding only genuine contributions to the useful knowledge of an art requires that mere adaptions, arrangements, or manipulations be denied the grant of legal monopoly. If what has been created demonstrates no more ingenuity than the work of a mechanic skilled in the art, if the display of inventive capacity "involves only the exercise of the ordinary faculties of reasoning upon the materials supplied by a special knowledge, and the facility of manipulation which results from its habitual and intelligent practice," Hollister v. Benedict & Burnham Mfg. Co., 113 U.S. 59, 73, 5 S.Ct. 717, 724, 28 L.Ed. 901 (1885), then the product does not possess that "impalpable something" characterized as invention. Great Atl. & Pac. Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147, 151, 71 S.Ct. 127, 95 L.Ed. 162 (1950).

The plaintiff contends that the decision of the district court should be affirmed because the defendant introduced no proof that slotting the flanged weatherstrip was obvious. We think the simple juxtaposition of the prior art clip and flanged weatherstrip which were introduced into evidence disposes of this contention. It was not necessary to introduce evidence from the millwork art or any other art that slotting is a common mechanical means. It is true that the defendant did not think of slotting

flanged weatherstrip, even though it sold such units simultaneously with its clips and in fact made an unsuccessful attempt to attach another type of clip to the back of its flanged weatherstrip. But these facts are not of themselves conclusive of nonobviousness, and it is also true, as the plaintiff testified, that no one suggested the desirability of using these items together until just prior to the time the problem was solved.

■ All that was done by the plaintiff-patentee was to provide slots, not totally unknown in themselves, in old flanged weatherstrip in order that the weatherstrip thus perforated might be received by the hooked end of a prior art clip. The suggestion that invention may reside in adding slots to prior art devices was commented upon by the Ninth Circuit in Bergman v. Aluminum Lock Shingle Corp., 251 F.2d 801 (9th Cir. 1957). There the court stated:

> Twilight is falling upon "gadgets" as subjects of patents. The dusk commenced to gather half a dozen years ago when, in a epochal decision, [Great Atl. & Pac. Tea Co. v. Supermarket Equip. Corp., supra] the Supreme Court fixed its canon against dignifying combined "segments of prior art" with the title of "inventions."

> In a concurring opinion in that case, Mr. Justice Douglas compiled a devastating list of "gadgets" that have been placed "under the armour of patents." The specification at bar proclaims at the outset that it is a "drain slot which forms the basis of this invention." If the trivial devices listed by Mr. Justice Douglas are "gadgets," then, in the hierarchy of invention, a slot should be classified as a *sub*gadget * * *. Id. at 802.

Avoiding the temptation to make the unnecessary generalization that slotting, wherever found, is not invention, we hold that adding slots to an existing device to permit it to be used in conjunction with hooks on another existing device involves no more than the "exercise of the ordinary faculties of reasoning upon the materials supplied by a special knowledge," Hollister v. Benedict & Burnham Mfg. Co., supra, and was therefore obvious within the meaning of section 103.

II. *The press-in feature*

■ The novelty, utility, and infringement, if valid, of claims 5 and 6 embodying the press-in feature of the plaintiff's clip have also been conceded by Zegers, Inc. Thus the issue with respect to these claims is again restricted to obviousness, that is whether the use of a press-in anchoring device containing barbed members for insertion into dado grooves to retain the clip therein without the use of any other fastening device would have been obvious to one with ordinary skill in the art.

The district judge found, as he had done with claims 1, 3, and 4, that the defendant failed to overcome the presumption of validity of claims 5 and 6 with sufficient evidence of obviousness and held the claims valid. In so finding, the district judge also concluded that the prior art patents relied on by the defendant were no more pertinent than those considered by the Patent Office and that therefore the presumption of validity had not been weakened. We think the disclosure of claims 5 and 6 stands on a different footing than the slotting of flanged weatherstrip, that it rises above the "gadget" category—in other words, that the record supports the district court's finding of validity.

The evidence tending to show the nonobviousness of recessing the center portion of the earlier Zegers, Inc. clip into the dado groove of a window frame and providing barbs in the recessed portion to engage the wooden sides of the dado groove thereby holding the clip securely in place was considerably stronger than that adduced in support of the nonobviousness of slotting flanged weatherstrip.[8] The plaintiff conceived his press-in clip and reduced it to practice early in 1959. The defendant did not place its

8. The burden of proving obviousness, of course, was on the defendant.

version of the press-in feature on the market until three years later, during which time it admittedly experimented with many variations of its earlier flat nail-on clip, including some which incorporated barbed recessed members. Thus, even if the record does not disclose any substantial long-felt need for the press-in clip, the evidence does show that the defendant struggled with the solution to a problem already solved by the plaintiff.

As we have stated, the novelty and utility of the press-in feature were admitted. The plaintiff's clip affords a a faster and easier means for mounting both flangeless and flanged weatherstrip in window frames than anything previously known in the art.[9] With it, weatherstrip units may be mounted without any tools whatsoever. A workman may either press the clip into the dado groove manually and then flexibly attach the weatherstrip unit, or he may mount the clip onto the weatherstrip unit, insert the unit into the window frame, and then press the clip into the groove. Despite the advantage thus gained by utilizing the otherwise useless dado groove, the evidence showed that for two years prior to the introduction of the press-in clip, many thousands of the defendant's flat clips were nailed directly across dado grooves during the installation of window units by workmen skilled in the art without ever appreciating the savings which could be made.

Finally, when the defendant did come out with a clip embodying the press-in feature of claims 5 and 6 of the plaintiff's patent, a clip which contains strikingly similar details and little else and which admittedly infringes these claims, the defendant obtained another patent for it.[10]

We have examined the prior art patents cited by the defendant and, with one exception, agree with the district court that the Patent Office did have equally relevant prior art before it in considering the plaintiff's application, and that the patents cited do not render the press-in clip obvious. The single exception is the Conlon patent, No. 2,219,382, which discloses a clip for mounting weatherstrip on automobile doors. The clip has hooked ends but is not used with detachably mounted weatherstrip. For that reason the Conlon patent was not particularly relevant to the clip in the earlier Zegers litigation, and we so stated. Zegers, Inc. v. Zegers, supra 299 F.2d at 771. But the clip does have a recessed portion with two sets of jagged members which serve to hold it in place and therefore is quite pertinent to a consideration of the plaintiff's press-in clip in this case.[11] The Conlon patent, however, does not sufficiently suggest the teachings of the plaintiff's clip to deprive it of invention. As the district court stated: "Conlon is unlike the plaintiff's patent because the clip does not engage itself by biting into the sides of a channel, but fits through a slot in the sheet metal of the door after being compressed. This patent does not suggest

---

9. The advance in the art in terms of savings in time and effort appears to us to be analogous to the advance credited to the introduction of the flat nail-on clip in the earlier Zegers litigation. See fn. 4, supra.

10. United States Letters Patent No. 3,-122,798, granted March 3, 1964 on an application filed April 11, 1962.

11. The positions taken by both the plaintiff and the defendant in this case regarding the relevancy of the Conlon patent are inconsistent with their positions taken on other dates when their interests

were different. In his brief before this court in the earlier *Zegers* case, the plaintiff (then defendant-appellant) told us that the Conlon clip was very much like his press-in clip. He stated, "It is fully capable of functioning in exactly the same manner to achieve exactly the same results." No. 13310, reply brief of defendant-appellant, p. 8. Similarly, in the prosecution of its application for patent No. 3,122,798, the defendant's version of a press-in clip, the defendant assured the Patent Office that the Conlon patent was not pertinent.

shaping the clip to the channel and engaging it by using teeth to bite into the sides of the channel." Therefore, claims 5 and 6 of the patent in suit are valid and infringed by Zegers, Inc.

The judgment of the district court is affirmed in part and reversed in part and the case is remanded for proceedings consistent with the views expressed herein.

## APPENDIX

A. Illustrations taken from Zegers, Inc. patent No. 2,869,184 showing weatherstrip flexibly attachable to flat clip nailed on window frame, and flat nail-on clip.

Fig.5.

Fig.8.

**B.** Illustration taken from Edward A. Zegers patent No. 3,058,176 showing slotted flanged weathership, press-in clip, and portion of window frame with dado groove.