**WESTINGHOUSE ELECTRIC CORPORATION, Appellant,**

**v.**

**TITANIUM METALS CORP. OF AMERICA, Appellee.**

**No. 25145.**

United States Court of Appeals, Ninth Circuit.

Dec. 15, 1971.

Rehearing Denied March 14, 1972.

Harold J. Birch (argued), Edward F. McKie, Jr., of Birch, Swindler, McKie &

Beckett, Washington, D. C., W. Bruce Beckley, of Singleton, Beckley, DeLanoy, Jemison & Reid, Las Vegas, Nev., Fred Shapoe, Patent Counsel, of Westinghouse Electric Corp., Pittsburgh, Pa., for appellant.

Raymond J. McElhannon (argued), of Cooper, Dunham, Henninger & Clark, New York City, Francis N. Marshall, of Pillsbury, Madison & Sutro, San Francisco, Cal., Herbert M. Jones, Las Vegas, Nev., for appellee.

Before CHAMBERS, HAMLEY and CHOY, Circuit Judges.

HAMLEY, Circuit Judge:

Westinghouse Electric Corporation brought this patent infringement action against Titanium Metals Corp. of America, for infringement of U. S. Patent 3,072,982. The district court held that Titanium had infringed the patent, but rendered judgment for Titanium on the ground that the patent is invalid for obviousness, under 35 U.S.C. § 103. Westinghouse appeals. We affirm.

The patent pertains to a step in the process for transforming a first arc-cast ingot of reactive metal such as zirconium, having a contaminated surface and lacking homogeneity and soundness, into a clean, sound and highly homogeneous ingot. The process step covered by the alleged patent comprised the employment of the solid arc-cast first ingot, without intermediate fabrication, as an electrode and consumably arc remelting the first ingot alone in a cooled mold, the mold forming the outer electrode.

In support of its determination that the alleged invention was obvious on April 4, 1952, when inventors Hurford and Gordon first disclosed the process to their subordinates, the district court made extensive findings of fact (eighty-two paragraphs), followed by conclusions of law, all of which are set out in 306 F.Supp. 402 (D.C.Nev.1969). We will assume that the reader of this opinion is familiar with those findings and conclusions.

The district court, in conclusion of law G, at 306 F.Supp. 414, gave two independent reasons for its decision that the process was obvious and therefore non-patentable. First, the court said, the prior art, and especially the Bureau of Mines' "828" process,[1] made the subsequent development of the patent process obvious to one skilled in the art.[2]

---

1. Under the Bureau's "828" process, the eight-inch diameter first metal ingot was forged and rolled to two-inch by two-inch bars and those consumably remelted in an eight-inch crucible. Testimony at the trial by Bureau employees was to the effect that forging and rolling was necessary only in order to resize the first-melt ingots to two-inch square electrodes to fit the feed mechanism of the Bureau's furnace, and that no improvement in homogeneity and soundness was attributed at that time to the intermediate forging and rolling operation.

But the contemporaneous Bureau reports did not so state. Rather, they attributed improvement in homogeneity and soundness to the operations actually performed, namely, forging and rolling followed by remelting. The trial court did not resolve this conflict and, for present purposes we will therefore assume that, prior to April 4, 1952, it was thought that an intermediate step of forging and rolling was necessary to attain satisfactory results with the Bureau's "828" process.

2. We note that the district court found as facts that the Patent Office had not cited or considered either the "828" process or certain other elements of the most pertinent prior art. The court concluded from these findings that the presumption of validity normally accorded to an issued patent under 35 U.S.C. § 282 had been overcome. We do not understand appellant Westinghouse to challenge those findings or that conclusion; but, in any event, we think the district court was correct. T. P. Laboratories, Inc. v. Huge, 371 F.2d 231, 234 (7th Cir. 1966). See Pressteel Company v. Halo Lighting Products, Inc., 314 F.2d 695, 697 (9th Cir. 1963); Jaybee Mfg. Corporation v. Ajax Hardware Mfg. Corporation, 287 F.2d 228, 229 (9th Cir. 1961). Consequently, the way was open for the district court to independently determine if the patent was void for obviousness free from any such presumption.

Second, the court reasoned, the subsequent, but almost simultaneous, independent development of the Bureau of Mines' "610" process (identical to the patent process in all material respects) also required the conclusion that the patent process was obvious.

Appellant Westinghouse attacks both reasons given by the district court for its conclusion that the patent was obvious. First, Westinghouse advances three related arguments which, taken together, present the question of whether the district court was correct in reasoning that conceded prior art, including the "828" process, made the patent process obvious under the governing statute and court decisions. None of the facts found by the district court to support this reasoning are challenged by Westinghouse.[3]

█ The criteria to be applied in determining whether an alleged invention is obvious, and therefore not patentable under 35 U.S.C. § 103, are set forth in Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Under those criteria, the district court is required to determine the obviousness or nonobviousness of the asserted invention against the background of its findings as to: (1) the scope and content of the prior art, (2) the differences between the prior art and the claims at issue, and (3) the level of ordinary skill in the pertinent art. Such secondary considerations as commercial success, long felt but unsolved needs, and the failures of others, may be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented, and have relevance to that extent.

The parties are not in dispute as to these criteria—they simply disagree as to whether the district court properly applied them in this case under the undisputed findings of fact. Westinghouse

calls attention to the fact that, applying the *John Deere* criteria, the Supreme Court, in United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966) held that the asserted invention there in issue was nonobvious. Westinghouse contends that the case now before us is more like *Adams* than it is like the *John Deere* case, in which the patent was held invalid for obviousness. We do not believe it would be particularly helpful for us to undertake a determination of whether the case before us is more like *Adams* than *John Deere*. The more direct inquiry is whether, in view of the undisputed *John Deere* criteria, the findings of the district court support its conclusion that the process in question was obvious on April 4, 1952, to a person having ordinary skill in the art.

Examination of the findings of fact reveals that, in reaching its conclusion, the district court gave detailed consideration to the first two of the *John Deere* criteria, namely (1) the scope and content of the prior art, and (2) the differences between the prior art and the patent claim at issue. According to these findings, in the prior art there had been forging, rolling or fabrication of the first arc-cast ingot into different shapes and sizes before the consumable arc remelting process was undertaken. This was true, for example, in the Bureau's "828" process.

The process step described in the patent would eliminate this intermediate forging, rolling or fabrication between the melting which produced the first arc-cast ingot, and the consumable arc remelting described above. The elimination of this intermediate work is the novel feature of the asserted invention.

The third prime criterion to be considered, namely, the level of ordinary skill in the pertinent art, is also dealt with extensively in the findings of fact.

---

3. The only finding of fact which Westinghouse challenges here is No. 29, at 306 F.Supp. 406; and that finding has relevance only to the district court's second reason for finding the process obvious, *i. e.* the independent development of the "610" process.

This was done by describing, in detail, the skill exercised by those concerned with the problem, in finding a way to produce zirconium alloy in substantial quantities which would have the desired qualities mentioned above. Likewise, the findings deal with the secondary indicia of obviousness referred to in *John Deere,* commercial success of the process step described in the patent, the period during which the need was unsolved and the difficulties experienced by others in attempting to solve the need.

In our opinion, the prior art and, in particular, the "828" process, as described in the findings, together with the unchallenged findings bearing upon the other pertinent criteria, warranted the district court in concluding that the process step described in the patent was obvious.

The novel feature of the process step is exceedingly limited. It does not consist of the development of an additional technique, but the elimination from the prior art process of one of the features of that process, *i. e.,* intermediate forging, rolling or fabrication. Even the elimination of this technique has some recognition in the prior art, as shown by finding of fact No. 14, describing non-consumable arc remelting of arc-melted refractory metal fifty gram buttons without intermeditate forging or rolling.

The district court was warranted in concluding that where intermediate fabrication, thought necessary to attain the desired quality of zirconium alloy, was time-consuming and contaminating, it would be apparent to those having ordinary skill in the art that elimination of the intermediate fabrication should be tried to see if it was really necessary. That is essentially all that happened in developing the process step described in the patent. Generally speaking, substantially less creative thought is involved in this kind of experimentation than in innovating an additional technique to be tacked onto the prior art process.

This is not to say that there cannot be invention absent a stroke of inventive genius. It may, in fact, be the fruit of an accident or serendipity. But whether it was obvious nevertheless depends in part upon the degree of creativity one having ordinary skill in the art would need to exercise in arriving at the same new idea without the help of an accident or unintended emergence of that idea. Having in view the specialized character of the art here in question, the level of ordinary skill in that art was relatively high. This means that what might not have been obvious to one having a lower level of skill should have been obvious to those who were active in this particular art.

None of the findings bearing upon the secondary criteria of obviousness, in our view, undermine the district court's determination that this claimed process step was obvious. Nor do we believe this determination is suspect because of the fact that until Hurford and Gordon thought of dropping the intermediate fabrication step, the idea did not occur to any of the other experts in the field. If this consideration were held to establish nonobviousness, the test of obviousness would be useless, since the asserted inventor must always be the first person to think of the idea and disclose it to others.

In summary, we are convinced that the district court correctly applied the criteria of the *John Deere* case in reaching its conclusion that the conceded prior art, including the "828" process, made the patent process obvious to one with ordinary skill in the art. Because this conclusion is sufficient to invalidate the patent under 35 U.S.C. § 103, we find it unnecessary to consider the correctness of the district court's second reason for finding the patent obvious, and we therefore decline to rule upon appellant's fourth and fifth arguments, which attack that second reason.

Affirmed.

CHOY, Circuit Judge (dissenting):

I respectfully dissent. I would hold that the District Court erred in concluding that the patent was invalid as "obvious at the time the invention was made to a person having ordinary skill in the art" under 35 U.S.C. § 103.

Accepting as sustained by the evidence in the record all of the findings of fact which are precursive to consideration of this crucial issue of obviousness, it is my opinion that a conclusion of nonobviousness of the invention is compelled by the following findings:[1]

1. The published prior art contained no suggestion of direct consumable arc remelting of ingots of metal. (16)

2. The fabrication techniques which involved chopping up, or forging and rolling the initial arc-cast ingot before remelting (as in the Bureau of Mines' "828" process) were time-consuming and expensive and inevitably resulted in "contamination" of the metal. (13, 20, 27)

3. For some months prior to completion of the invention, the Bureau of Mines, by its "828" process, had been remelting zirconium alloy metal, and up to at least July 26, 1952, had remelted three tons of such metal by that process. (19)

4. The wastage, increased cost of production and increased contamination incident to the "828" process created a need for the invention over six months before the invention was completed. (33)[2]

5. On July 26–28, 1952, subsequent to, but not long after, the invention was developed, the Bureau of Mines independently and successfully employed its "610" direct double-melting technique without intermediate fabrication. (29, 44, 50, 51)

6. Direct remelting without intermediate fabrication resulted in much less waste of valuable zirconium alloy, decrease in cost of production, and reduction in contamination while still obtaining good homogeneity and soundness. (32)

7. The invention was immediately adopted by others and used to prepare zirconium ingots and has gone into universal use to produce sound homogeneous ingots of reactive metals. (81, 82)

In Graham v. John Deere Co., 383 U.S. 1, 17–18, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966) the Supreme Court established the standards to be applied in determining obviousness under 35 U.S.C. § 103:

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy."

The District Court did determine the scope and content of the prior art; it did ascertain the differences between the prior art and the invention at issue; but it did not resolve the level of ordi-

1. The figures in parentheses are Findings of Fact numbers as found in the District Court opinion, 306 F.Supp. 402 (Nev.1969).

2. The need appears to have existed as early as 1948 when the U. S. Navy began development of atomic reactors to power naval vessels. During 1950–51 Westinghouse constructed a prototype or Mark I nuclear reactor made from more than 20 tons of "crystal bar" zirconium which was produced from zirconium sponge by a tedious and expensive purification process. Findings of Fact 6–10.

nary skill in the pertinent art.[3] The Findings of Fact furnish a rather clear conception of the efforts and developments on the part of metallurgy experts dealing with reactive metals. But we are given nothing about the level of ordinary skill in the art, about the metallurgist or technician of ordinary skill and how obvious or unobvious the invention was to him when it was made. Obviously, the expert cannot be equated with the "person having ordinary skill in the art" contemplated by § 103. An expert is by his very nature unordinary.[4]

At any rate, if the double-melting process eluded the experts "over six months" (probably since 1948) in a period of national need for the process during the continuing international arms race, how can it be said that the invention was obvious? The Bureau of Mines would not have produced three tons of zirconium alloy using its slow and expensive "828" process with 56 percent yield if the fast and relatively economical double-melting process which resulted in 95 percent yield had been obvious.

The speedy commercial success and universal use of the process attest to the great need of the invention. The independent and almost contemporaneous, but subsequent development of the "610" process by the Bureau of Mines does not denote obviousness in my opinion. If it did, then every time two or more inventors independently devise an invention, however novel, ingenious and unobvious, within a short time of each other, the inventions would be "obvious" under the statute. The entire purpose of the law of patent interference is to determine who first invented the item at issue. Appellant's inventors won the race to the patent office, and should be protected.

3. It appears that all of the evidence presented dealt with or emanated from only experts in the field of metallurgy; e. g., Kroll of the Bureau of Mines, who developed a process for the production of sponge zirconium; Parke and Ham, who published a paper on the melting of molybdenum in the vacuum arc; Hayes, chief of the physical metallurgy branch, Bureau of Mines; Stephens (former chief of the rare metals branch, Bureau

of Mines) metallurgist with Carborundum Metals Co.; Gordon and Hurford, the actual inventors of the process in issue here; Herres, head of titanium research at Allegheny Ludlum; and Kuhn, expert of Titanium Alloy Manufacturing Division, National Lead Company.

4. See Abington Textile Machinery Works v. Carding Specialists (Canada) Ltd., 249 F.Supp. 823 (D.C., D.C.1965).