## DELTA MFG. CO. v. E. L. ESSLEY MACHINERY CO.

### No. 8789.

Circuit Court of Appeals, Seventh Circuit.

Feb. 28, 1946.

Rehearing Denied April 3, 1946.

John W. Michael and Gerrit D. Foster, both of Milwaukee, Wis., for appellant.

William A. Strauch and J. Matthews Neale, both of Washington, D. C., and Vernon A. Swanson and Miller, Mack & Fairchild, all of Milwaukee, Wis. (Strauch & Hoffman, of Washington, D. C., of counsel), for appellee.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

SPARKS, Circuit Judge.

Plaintiff charged defendant with infringement of Claims 6, 7 and 8 of its United States Patent to Tautz, No. 2,069,-395, issued February 2, 1937, on an application filed October 21, 1935. The answer denied infringement and alleged invalidity for lack of invention. The court gave a written opinion, found the facts specially, and rendered its conclusions of law thereon. By these it announced, found and concluded that each of the claims was valid and infringed. The only issue here is invalidity.

The invention relates to safety shields for grinding wheels and the like. Its object is to provide a shield which will effectively guard the user from flying particles and afford shadowless illumination of the wheel and work, viewed through the shield. Other objects are to provide a shield which can be easily assembled and rigidly mounted to avoid vibration, with simple and effective means for mounting and replacing thereon a transparent panel. Claim 6 is typical.[1]

The elements of this patent are quite old in the art, and, as affecting patentability, the only question before us is whether their use here discloses a new and useful result.

In the court's opinion, 63 F.Supp. 930, is given a historical setting of the problem which confronted the inventor at the time of his disclosure. It is supported by the record and is substantially as follows:

From the time that power grinder machines came into use workmen operating such machines had received many injuries to the eyes, face, and hands. Small particles of abrasive wheels and from the metal pieces being ground were by the nature of the operation thrown into the air with some force, and these particles often lodged in the eyes of the operators or injured exposed portions of the face. The grinding wheels were often practically noiseless in operation, and inadequate lighting made it difficult to observe whether the wheel was in motion, with the result that the operators and others suffered painful injuries by inadvertently coming in contact with the rotating wheel. Actual grinding of many tools and pieces required more adequate light than existed at the

---

[1] 6. "A safety shield comprising a housing having a top wall and a skirt, said top wall having an opening, a transparent panel for said opening for viewing work therethrough, and means carried by said housing for directing light onto the work from regions adjacent the opposite sides of said panel and within said skirt."

point of contact between the work piece and the grinding wheel. These difficulties persisted even though the grinders were placed where the available illumination from general sources, such as window and lighting fixtures, was considered best.

· Labor unions, safety committees, and management interested themselves in the problem. Goggles were provided; they were hung on the grinding machine and were supposed to be worn during any grinding operation. While they did protect the eyes of the operator, they impaired his vision, were often uncomfortable and unsanitary, and did not protect the other portions of the face which were exposed. Thereafter the practice was adopted in many areas and each worker had his own goggles. However, for many short grinding operations, the worker either forgot or neglected to use them and serious injuries continued to occur.

Perhaps as early as 1898 use was made of transparent, non-illuminated, hinged shields, designed to be supported on the grinder adjacent to and above the grinder wheel. These shields tended to somewhat distort and decrease the available light rays. Consequently operators often moved them out of the way and used the grinder without such protection. About 1923, shields were introduced with a single electric light bulb built in. The evidence disclosed that although such shields were used to some extent, they were not entirely satisfactory because shadows were cast on the work and because glare from the light impaired the vision of the operator.

Tautz' shield consists of a metal frame having a depending peripheral skirt, inwardly-disposed, depending partition members generally paralleling three sides of the depending skirt, a central opening closed by a transparent window or panel and lying within the confines of the depending partition members so as to provide peripheral recesses at the sides and back for receiving light bulbs and electric wiring. A pair of light bulbs is located in pockets at the sides of the shield out of the line of particles thrown off from the wheel. This shield is permanently mounted close to the grinding wheel and cannot be thrown back. It effectively intercepts grinding dust and particles thrown off from the wheel, and concentrates shadowless illumination along the sides and at the front of the grinding wheel and work, without glare in the eyes of the operator.

Defendant contends that the patent is completely anticipated by the following prior art, over which there is no invention. This prior art was not considered by the Patent Office.

The first is a single-lamp safety shield for grinding machines, made and sold by Surty Manufacturing Company, and also the attempted improvement over Surty, made and used at the Boys Technical High School at Milwaukee. Each of these disclosures of prior art has but a single light, and for that reason, neither affords shadowless illumination of the wheel and work, when viewed through the shield. However, defendant insists that Tautz' disclosure of two lights within the shield instead of one is but the display of the expected skill of the calling and is in no sense creative work of the inventive faculty. True, Tautz' disclosure in this respect is quite surprising in its simplicity, and when we consider the results of the disclosure in respect to the preservation of life and body, in the face of a constant demand of the public, we are the more surprised that some one did not make the disclosure sooner, but they did not. It is aggressive rather than dormant skill which measures the state of the art, and it is the results which determine utility. It is significant that Surty subsequently was licensed by plaintiff to use Tautz.

■ The defendant also relies upon United States patents No. 1,952,073 to Jones, and No. 1,960,114 to Lindsay, which were not considered by the Patent Office. The former is for a cutting machine, and the specifications are applied to the cutting of paper, although it is intended that they should also apply to the cutting of textiles, rubber and the like. The latter patent is a device for illuminating a magnifying glass. Its objects are to illuminate the object viewed through a lens in such manner as to avoid a glare on the lens or in the eyes; to illuminate the object viewed from a sufficient number of angles with enough light intensity to eliminate shadows; and to provide such device with a light reflector whose focal point will coincide with that of the lens. It is clear that neither of these patents discloses a guard of any kind. They are not in fields analogous to the instant patent. "Two inventions are identical in substance if they perform substantially the same function or office in substantially the same way, and produce substantially the same

result. They are not identical in substance if they accomplish substantially different results, or perform different functions, or if they perform the same function in a different way." 48 Corpus Juris (1929), § 27. To the same effect are Seymour v. Osborne, 11 Wall. 516, 78 U. S. 516, 20 L.Ed. 33; Consolidated Roller Mill Co. v. Walker, 138 U. S. 124, 11 S.Ct. 292, 34 L. Ed. 920; Chicago Lock Co. v. Tratsch, 7 Cir., 72 F.2d 482; Nordberg Manufacturing Co. v. Woolery Machine Co., 7 Cir., 79 F.2d 685.

■■ The evidence here is substantial that the Tautz shield was quite generously received by the purchasing public, and that too without previous paid advertising, and notwithstanding the fact that plaintiff's grinder and shield sold for more than twice as much as other such competing devices. Furthermore, the Tautz shield was also designed to be, and was, used on grinders other than plaintiff's, and twenty-five per cent of the total number of Tautz shields sold by plaintiff were for use on grinders other than plaintiff's. Of course commercial success alone is not sufficient to establish patentability, but, where, as here, patentability, at first glance, might seem doubtful, merely because of the simplicity of the disclosure, the presence or absence of commercial success should be considered in resolving such doubt. This the District Court did, and we think the right conclusion was reached as to validity.

Decree affirmed.