**AMPHENOL CORPORATION, a corporation of Delaware, Plaintiff,**

**v.**

**GENERAL TIME CORPORATION, a corporation of Delaware, Defendant.**

**No. 66 C 218.**

United States District Court
N. D. Illinois, E. D.
July 31, 1967.

**904**

Erwin C. Heininger, Burton Glazov, Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Scott W. Lucas, of Lucas & Thomas, Chicago, Ill., for plaintiff.

Phillip H. Mayer, John P. Bundock, Jr., Wolfe, Hubbard, Voit & Osann, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

Plaintiff brought this action under 35 U.S.C. § 281, seeking money damages and injunctive relief against defendant's alleged infringement of plaintiff's United States Patent No. 3,137,122. This court has jurisdiction over the action under 28 U.S.C. § 1338(a). From the evidence presented at a bench trial of the instant action, we conclude that the patent in suit was invalid and therefore not infringed.

Both plaintiff (Borg) and defendant (G-T) manufacture electric automobile clocks which they sell to automobile manufacturers. The automobile clocks dealt with in this action are driven by a main spring which is wound at intervals of from one to three minutes by an electric motor energized from the car's battery and brought into play as the spring approaches its unwound condition. The main spring drives the gear train, and through it the clock hands, in a conventional way at a rate determined by an escape wheel. The alternating hold and release actions of the escape wheel are timed by pallet pins carried on a pallet which is swung back and forth by an oscillatory balance wheel having a regulated period of oscillation. The escape wheel thereby releases the driving action to let the main spring turn the hands at timed intervals.

For several years prior to 1960, the date of Borg's invention, the automobile companies had asked Borg and G-T to reduce the noise in their clocks. Clock noise has two primary sources. "Wind" noise is produced by the electrical winding of the main spring. In addition, when the pallet pins collide with the teeth of the escape wheel, the resultant release of energy sends vibrations back through the gear train. These vibrations are evidenced by the "tick" sound. It is this "tick" noise that the patent in issue was designed to reduce.

Escapements, or escape wheels, have traditionally been connected to the gear train by a fixed connection on a solid driving shaft. Noise-generating vibrations from the shock of the pallet pin-escape tooth collision would course up this solid shaft.

Both Borg's and G-T's devices attack the tick noise problem in the same way. Instead of a fixed connection between the escape wheel and its shaft, the escape wheel is freely journalled on the shaft, allowing it to move away from the shock

of the pallet pin impact. As a necessary adjunct to this free movement, the escape wheel is connected to the power train by a spring rather than a rigid driver. This resilient connection allows the collision to drive back the escape wheel to either its former or an advanced position.[1] Further, the spring itself absorbs some of the collision energy.

■ Defendant has raised several challenges to the validity of the Borg patent. It charges: 1) that the patented device was "on sale" more than one year prior to the date of the patent application; 2) that those elements of the device which the plaintiff claims are an advance over the prior art lack utility; 3) that the sound reducing elements of the device had been patented prior to the invention of Borg's device; and 4) that the alleged advance over the prior art would have been obvious to a person having ordinary skill in the clockmaking art. The testimony and exhibits introduced at trial substantiate the merit of each of these challenges. The patent in suit is clearly invalid.

### 1. The "on sale" Issue.

Borg's resilient escapement device was first constructed in May, 1960. In September 1960, Borg submitted a clock sample embodying the resilient escapement to Cadillac, a customer which had persistent complaints about clock noise. In October, 1960 ten more samples were delivered to Cadillac and Borg submitted a suggested price for the resilient escapement. Borg's application for patent was not filed until January 4, 1962.

Since January 4, 1961 is the critical date for determining whether the device was "on sale" more than one year prior to the date of patent application under 35 U.S.C. § 102(b), the issue before this court is whether the submission of the samples to Cadillac in 1960 constituted an offer of sale.

Sales in the automobile clock market are initiated by presentation of samples to potential customers. Preparation for production does not begin until the customer approves the samples, agrees on a price, and gives a firm order. The procedure followed by Borg in the instant case is consistent with this sale-by-sample trade custom.

■■ Given the sale-by-sample method employed by the industry, the supplier-customer relationship between Borg and Cadillac, and a transfer of the resilient escapement device to Cadillac in a manner identical to the industry's method of sale, we find that the defendant established a prima facie defense that the Borg resilient escapement was "on sale" to Cadillac in 1960. Once such a prima facie defense is established, the burden of coming forward with evidence falls on the plaintiff to show that the submission of samples was not an "on sale" event. Koehring Co. v. National Automatic Tool Co., 362 F.2d 100 (7 Cir. 1966); George R. Churchill Co., Inc. v. American Buff Co., 365 F.2d 129 (7 Cir. 1966).

■ Plaintiff seeks to avoid the "on sale" bar by arguing that its transactions with Cadillac prior to January 4, 1961 were solely concerned with bona fide experimentation with the performance of the resilient escapement. Under the doctrine of experimental use, an invention is not considered in "public use" and "on sale" if used solely for experimental purposes. Hobbs v. Wisconsin Power & Light Co., 250 F.2d 100 (7 Cir. 1957); Watson v. Allen, 103 U.S.App.D.C. 5, 254 F.2d 342 (1958).

Instead of substantiating Borg's experimental use position, the circumstances surrounding the submission of the samples to Cadillac support the conclusion that Borg's desire for experimentation, if any, was secondary to Borg's competitive commercial desire to

---

1. Using the connecting spring to advance the escape wheel beyond its former position is called a Remontoire effect. G-T's Forms A and B have a Remontoire effect. Remontoire is an auxiliary method of driving the escape wheel for smoother release of power and has no proven effect on sound reduction.

satisfy a disgruntled customer. In 1960 Cadillac had become particularly insistent in its demands that Borg produce a quieter clock. Borg admitted that at least one of its motives in supplying the samples was to "placate" Cadillac. If Cadillac wasn't shown some improvement in noise reduction, a clear danger existed that it might buy from Borg's competitors. This competitive motivation negates any claim that the submission of the samples was inspired solely by a bona fide desire to test the qualities of the invention.

In addition, Borg's failure to request or make use of any Cadillac test data prior to Borg's decision to enter full scale production of the resilient escapement indicates the relatively minor experimental as against commercial importance attributed by Borg to the submission of samples to Cadillac. After the Cadillac engineering department had conducted one field test in September 1960, and had issued engineering approval of the device, Borg did not receive any further test data from Cadillac until April 1961, months after production had begun.

▪ At the very least, therefore, the submission of samples to Cadillac was motivated in part by a competitive desire to keep Cadillac as a customer. Consequently, the submission of the samples cannot be said to be *solely* for purposes of experimentation, a condition precedent to a finding of experimental use. Koehring Co. v. National Automatic Tool Co., supra; George R. Churchill Co., Inc. v. American Buff Co., supra. Plaintiff has not rebutted defendant's prima facie showing that Borg's resilient escapement was offered for sale in 1960. We find that the patented device was "on sale" more than one year prior to the date of the patent application and therefore invalid under 35 U.S.C. § 102(b).

## 2. Utility

▪ It is axiomatic in patent law that an invention for which patent protection is sought must contain some improvement over the prior art which is useful.[2] The patent in suit declares its sole benefit to be the substantial reduction of the tick noise. At trial, Borg added the additional claims that the patented device resulted in better timekeeping and longer life. However, an examination of the elements of the Borg device which Borg claims are not found within prior art resilient escapements shows that none of these elements contribute to noise reduction, better timekeeping, or longer life. Borg introduced evidence to show that its resilient escapement was quieter than clocks using solid shaft escapements. It argues that this evidence is conclusive of utility. Since resilient escapement devices which result in the benefits claimed by the Borg patent had been patented prior to the invention in suit, the relevant inquiry is not whether the Borg resilient escapement is quieter than solid shaft escapements. Rather, it is whether the elements which Borg claims constitute an advance over prior art resilient escapements contribute to the benefits claimed.

At trial, Borg's experts selected several elements of the Borg device which allegedly produced quieter operation and which were not found in prior art resilient escapements. Among these were the facts that the helical connecting spring "telescoped" over the hubs of the wheel and the pinion, that there was a space between the hubs, and that the spring frictionally gripped the hubs of the pinion and escape wheel. No test data confirming these assertions was submitted.

Further, G-T's independent expert Verde, testified that the only elements in resilient escapements such as Borg's which produced a quieter operation were the freely journalled escape wheel and the connecting spring. According to Verde, the degree of sound reduction achieved depended not on the form or mounting of the resilient spring driver but on the deformability of the spring— the more deformable the spring driver, the greater the reduction in noise. A

2. 35 U.S.C. § 101.

more flexible spring allows the freely journalled escape wheel to retreat a greater distance from the shock of the pallet pin collision and thus dissipate more energy. None of the elements on which Borg relies have been shown to aid or increase the dissipation of collision energy. Borg's expert, Dinerstein, testified that he did not know why a resilient escapement reduced tick noise.

As discussed below, prior art resilient escapements embody both a freely journalled escape wheel and a spring driver. The above analysis of how a resilient escapement operates to reduce tick noise shows that those prior art escapements would produce the same degree of noise reduction as the Borg device.

■ Since prior art resilient escapements would reduce the tick noise in the same way as the Borg device—by the use of a spring driven freely journalled escape wheel—and since the elements Borg relied on to differentiate its device from the prior art do not contribute to the reduction of tick noise, the Borg invention cannot be said to be useful under the patent law. The patent is therefore invalid for lack of utility under 35 U.S.C. § 101.

### 3. Anticipation by the prior art

■■ One of the prerequisites of a patentable device is that it possess novelty.[3] Under the doctrine of anticipation, a device is not novel if it is substantially identical with a prior patented device. Monroe Auto Equipment Co. v. Heckethorn Mfg. & Supply Co., 332 F.2d 406, 415 (6 Cir. 1964). A common definition of substantial identity has been stated by the Seventh Circuit in Delta Mfg. Co. v. E. L. Essly Machinery Co., 153 F.2d 905, (7 Cir. 1946) quoting Corpus Juris:

> Two inventions are identical in substance if they perform substantially the same function or office in substantially the same way, and produce substantially the same result. They are not identical in substance if they accomplish substantially different re-

sults, or perform different functions, or if they perform the same function in a different way. 153 F.2d at 906.

Applying this formulation of the doctrine of anticipation to the patent in suit, it is clear that the Borg device has been anticipated by prior art resilient escapements. As we noted in our discussion on utility, the noise reducing function of the Borg device is accomplished by use of a spring driven, freely journalled escape wheel. The shape or the particular method of mounting the spring, while they may have an as yet undisclosed effect on ease of production and strength of the device, have no effect whatsoever on the sound reducing qualities of the escapement.

■ Mauthe British patent (1933) discloses a resilient escapement designed to reduce tick noise by means of a spring driven, freely journalled escape wheel. United States patents Arnold (1901) and Jeanneret (1949), and the British patent by Junghans (1907), are all resilient clock escapements using spring drive, freely journalled escape wheels. While the specific purpose of these patents was better timekeeping through smoother transmission of power (the resilient escapement prevents a reverse motion from being transmitted to the gear train by the shock of the pallet pin collision), the evidence shows that as a result of the identity of functional elements between the Borg device and these patents, these prior art devices would have the same capacity for sound reduction as the Borg device. Adoption of an old device and mere identification of a function already performed by that device does not constitute novelty. General Radio Co. v. Superior Electric Co., 321 F.2d 857 (3 Cir. 1963); American Sign and Indicator Corp. v. Schulenburg, 267 F.2d 388 (7 Cir. 1959).

### 4. Nonobviousness of the patent in suit [4]

In its most recent discussion of patentability, the Supreme Court has discussed the focus to be adopted by a court applying the nonobviousness standard of section 103,

---

3. 35 U.S.C. § 101, 35 U.S.C. § 102(a).

4. 35 U.S.C. § 103.

908

Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy.[5]

■ Looking at the Borg device, we find that the only major difference between it and the prior art resilient escapements discussed above is Borg's frictional gripping of the escape wheel by the driving spring. Not only is this alleged difference nonfunctional in sound reduction, it is found elsewhere in the clockmaking art. The Differential German patent (1920) embodies a helical spring driver frictionally gripping collars at both its driving and driven ends. Consequently even if we had found that the Borg device had both utility and novelty, we would find the patent invalid since the only significant difference between the Borg device and prior art resilient escapements, frictional gripping, was a known method of mounting driving springs before the conception of the Borg device.

■ The other considerations urged by Borg are unpersuasive. Commercial success, solution to long felt needs and the failure of others[6] are factors which may help resolve a close controversy, but these factors cannot create nonobviousness when the alleged improvement over the prior art was known to the industry

to which the subject of the patent pertains. Monroe Auto Equipment Co. v. Heckethorn Mfg. & Supply Co., supra, 332 F.2d at 414, and cases cited therein.

Two further tasks require our attention. The question still remains whether G-T's Forms A and B could be found to infringe the Borg device if we had held the Borg patent valid. Second, assuming both validity and infringement of the Borg patent, G-T argues that Borg is estopped from receiving damages for the period from June 1964, the date of the patent, to February 1966, the date of the initiation of the instant suit, on the ground that Borg remained silent during this period, giving no notice of infringement. G-T also wants recognition that an implied license existed for a limited period from the time G-T allegedly first received notice of the infringement in order to convert its manufacturing facilities to a non-infringing escapement.

### 1. Infringement

Any assumption of validity of the Borg device would necessarily be grounded on the acceptance of Borg's frictional gripping element as a nonobvious, useful addition to the knowledge of the prior art. All technical differences aside, Borg relied on frictional gripping as the element which produced an improvement over prior art sound reduction.

Assuming, therefore, the validity of the Borg patent, it is obvious that G-T's Form A infringes the Borg patent, while G-T's Form B does not. Under our prior analysis of the functional operation of a resilient escapement, we stated that the only elements which affected sound reduction were the spring driver and the freely journalled escape wheel. A holding that the Borg patent was valid would add a third element, mounting of the spring driver by frictional gripping.

5. Graham v. John Deere Co., 383 U.S. 1, at 17, 18, 86 S.Ct. 684, at 694, 15 L.Ed.2d 545 (1966).

6. Parenthetically, Borg's claim that it succeeded where others failed is specious.

The evidence showed that G-T developed a successful resilient escapement in 1955 but felt that the relatively insignificant sound reduction produced by resilient escapements did not justify the increased cost of production.

Form A contains all three elements and is substantially identical in form and function to the Borg device. Form B, however, while using the spring driver and freely journalled escape wheel found in the prior art, does not use frictional gripping as a method of mounting the spring. Form B could not be held to infringe the Borg device since it performs the same function in the same manner as do prior art devices (specifically, Junghans). Only through logical myopia could we hold that a device identical to prior art devices infringed another device which we had held nonobvious and unanticipated by the same prior art.

### 2. The right to an implied license

In asking that Borg be estopped from damages based on any infringement prior to the institution of the instant suit and further for an implied license for a short period from the date of the suit, G-T relies on one primary allegation of fact: that it did not receive notice of infringement until the institution of the suit, some eighteen months after Borg had been granted the patent. Given the factual circumstances surrounding G-T's development of its resilient escapement device, we believe that G-T received adequate notice of infringement within four months of the granting of the patent, and is not entitled to a finding of estoppel or implied license.

In 1961 G-T obtained a Borg resilient escapement and made engineering sketches of it. In 1963 G-T put its Form A, almost a copy of the Borg device, into production. In October 1964, four months after the patent issued, plaintiff's director of patents gave a copy of the patent in suit to G-T's patent attorneys and offered to license G-T under the patent. Since G-T had closely scrutinized the development and sale of the Borg device and had put an almost exact copy (Form A) into competition against it, it is inconceivable that G-T's attorneys would not recognize the danger of infringement when tendered a copy of the Borg patent.

## Conclusion

The defendant has demonstrated that the patent in suit fails to meet four different statutory prerequisites to validity. We find 1) that the Borg resilient escapement was offered for sale to Cadillac in 1960 and therefore "on sale" under 35 U.S.C. § 102(b); 2) that the alleged improvements over prior art resilient escapements do not contribute to sound reduction and therefore lack utility; 3) that prior art resilient escapements anticipate the Borg device in that they reduce tick noise in the same way and, finally, 4) that the friction grip mounting relied on in the patent was known to the clockmaking industry long before the creation of the Borg escapement and therefore obvious to a person having ordinary skill in the pertinent art.

Since an invalid patent is not entitled to protection against alleged infringement, the defendant is entitled to judgment in its favor. An order consistent with the above opinion and the findings of fact and conclusions of law which accompany it will enter.