**EDOCO TECHNICAL PRODUCTS, INC.,**
Plaintiff,

v.

**PETER KIEWIT SONS' CO., Defendant.**

Civ. A. No. 67–10–HP.

United States District Court,
C. D. California.

March 20, 1970.

---

Fulwider, Patton, Rieber, Lee & Utecht, Francis A. Utecht, J. F. Mc-Lellan, Long Beach, Cal., for plaintiff.

Huebner & Worrel, Herbert A. Huebner, Harlan P. Huebner, Los Angeles, Cal., for defendant.

PREGERSON, District Judge.

## FINDINGS OF FACT

1. This is an action for infringement of United States Letters Patent No. 3,274,906. Said patent was duly assigned to plaintiff EDOCO TECHNICAL PRODUCTS, INC. by the inventors Robert F. Dill and Lee Worson.

2. Plaintiff EDOCO TECHNICAL PRODUCTS, INC. is a California corporation having a place of business at 22039 South Westward Avenue, Long Beach, California.

3. Defendant PETER KIEWIT SONS' CO. is a Nebraska corporation having a regular and established place of business at 301 East Santa Clara Street, Arcadia, California.

4. Jurisdiction of this Court was properly invoked upon the ground that plaintiff's cause of action arises under the Patent Laws of the United States.

5. Defendant's acts of infringement of the patent in suit were committed within the Eastern District of California, but said acts were controlled by defendant through its office in the Central District of California and defendant has waived any question of venue.

6. The patent in suit is directed to apparatus for placing plastic strips of joint insert material of cruciform cross-section in uncured concrete while such concrete is being laid upon a prepared base, or shortly thereafter. The patented apparatus is utilized to place the strips either longitudinally or transversely relative to an elongated concrete structure. A longitudinal machine is shown in FIGS. 1–4 of the patent, and a transverse machine is shown in FIGS. 10 and 11 thereof. Each strip is of cruciform cross-section and is placed in uncured concrete in order to form a weakened plane joint in the concrete as the concrete contracts during curing. The joint provides for thermal expansion and contraction of the cured concrete. The joint is formed as the concrete shrinks upon curing, such shrinking causing the concrete to crack in a vertical line immediately along the vertical band of each

strip. As the concrete hardens the horizontal wings of each strip become embedded in the concrete slabs on either side of the vertical crack so as to form a waterstop restraining downward flow of water through the crack.

7. Dr. Lee Worson, President of plaintiff and one of the co-inventors of the patent in suit, is a pioneer in the forming of weakened plane joints in concrete by using cruciform cross-section plastic strips. Cruciform strip joint insert material has been and is being sold by plaintiff under the trademark CON-STOP.

8. The apparatus of the patent in suit was particularly developed for use in placing cruciform-shaped plastic joint insert strip material of the CONSTOP type in concrete irrigation canals so as to form weakened plane joints in the canals. Plaintiff developed the apparatus of the patent in suit with the hope that such apparatus would be used in paving of the California Aqueduct (Feather River Project). The patented apparatus was perfected only after considerable research and development work. The cost of such research and development approximated $300,000.00. Plaintiff's initial efforts to develop the patented apparatus met with extreme skepticism in the concrete paving trade.

9. In January 1964 plaintiff conducted a successful demonstration of the patented apparatus at Los Banos, California. As a result of the Los Banos demonstration, plaintiff's patented apparatus was approved for use by California Department of Water Resources on the Feather River Project. Thereafter, plaintiff's patented apparatus was successfully utilized by the following contractors in paving approximately 220 miles of the Feather River Project canal, namely, Western Contracting Corp., Morrison-Knudsen Co., Granite Construction Co. and Gordon H. Ball Enterprises; Clyde W. Wood and Sons, Inc.; Case-Hood Construction Co. and Wunderlick Co.

10. In forming a weakened plane joint with a cruciform plastic strip, air bubbles are trapped underneath the horizontal wings of the cruciform strip as it is embedded in the uncured concrete. As the concrete hardens, those trapped bubbles, if not eliminated, cause voids in the concrete in the area just underneath the horizontal wings. Those voids prevent watertight attachment of the hardened concrete to the horizontal wings of the cruciform strip. Consequently, unless the voids are eliminated, when the canal is filled, water will leak downwardly past the strips into the canal bed. Not only is the loss of such water expensive, but additionally the escaping water cuts away the canal bed causing washouts of the canal lining. It is therefore crucial that the air bubbles be eliminated from the area underneath the horizontal wings of the cruciform strip as the strip is inserted into the concrete. This result was first achieved by the patented apparatus.

11. Although, not the first apparatus developed to insert elongated strips into uncured concrete the patented apparatus was the first to eliminate air bubbles trapped underneath horizontal wings of insert strips. Most of the prior art patents utilized the same three basic elements employed by the patent in suit namely:

a) a smoothing element that presses downwardly on the concrete as the apparatus moves forwardly over the concrete,

b) a guide tube through which the strip is guided rearwardly into the concrete as the apparatus moves forwardly, and

c) vibrator means to vibrate the smoothing element and tube and thereby temporarily liquify the concrete in the area of the tube discharge portion.

Although prior art apparatus utilized the same three elements as the patented apparatus, such prior art apparatus was completely inoperative to eliminate air bubbles from underneath the horizontal wings of a cruciform joint insert strip.

12. The designers of prior art devices failed to eliminate those trapped air

bubbles because they did not know that it was essential to place the discharge portion of the guide tube immediately below the downwardly and rearwardly directed portion of the smoothing element. Only when the discharge portion of the guide tube is positioned immediately below the downwardly and rearwardly directed portion of the smoothing element is the liquified concrete forced downwardly around the discharge portion of the insert tube and around the cruciform strip as it emerges therefrom, so that trapped air bubbles are pushed forwardly and squeezed out of the space just underneath the horizontal wings of the cruciform insert material. As those trapped air bubbles are pushed forwardly and squeezed out of the space just underneath those horizontal wings, they are forced out of the concrete into the atmosphere at the area where the concrete, the guide tube and the atmosphere meet. The space which was occupied by the eliminated trapped air is filled by concrete liquified by vibration. Upon hardening, this liquified concrete locks onto the horizontal wings of the cruciform strip thereby achieving a watertight joint. This result can take place only when the forces generated by forward movement, downward pressure and vibration operate simultaneously. By eliminating the trapped air from underneath the horizontal wings of a cruciform insert strip in this manner, the patented apparatus provided a new result not obtainable with prior art apparatus.

13. The problem of forming and sealing joints in concrete canals existed from as early as 1915. The patented apparatus solved that problem. The invention disclosed by the patent in suit makes an important contribution to the art of paving canals.

14. Plaintiff's charge of infringement arose out of defendant's use of a longitudinal strip inserting machine on the San Luis and Buttonwillow reaches of the Feather River Project. Such longitudinal machine is shown in plain-

tiff's Exhibit Nos. 4, 5, 7–16, 24, 32–35, 50, 60, 61 and 62. Defendant's San Luis transverse strip inserting machine is shown in plaintiff's Exhibit Nos. 6, 17–21, 25, 30, 36, 37, 51, 63 and 64. Defendant's Buttonwillow transverse strip inserting machine is shown in plaintiff's Exhibit Nos. 31, 38, 39, 52 and a partial physical specimen is represented by defendant's Exhibit No. K. Plaintiff charged infringement of Claims 1, 2 and 5 of the patent in suit by defendant's longitudinal machine, and infringement of Claims 1 and 3 by both the San Luis and the Buttonwillow transverse machines. Claim 4 was not at issue and was not considered by the Court.

15. Defendant's longitudinal machine and San Luis transverse machine were both constructed by Raymond Hanson of Palouse, Washington. The longitudinal machine utilized by defendant was the same machine employed by Morrison-Knudsen Company in paving the canal reach adjacent to the San Luis reach paved by defendant. Hanson was completely familiar with the construction and operation of plaintiff's patented apparatus by virtue of his prior contacts with plaintiff. Defendant's Buttonwillow transverse strip inserting apparatus was largely the design of the co-inventor Robert F. Dill of the patent in suit after Dill had terminated his employment with plaintiff. Dill and plaintiff are now competitors in the manufacture and use of apparatus for placing plastic insert strips in concrete. Defendant's longitudinal machine was operated by a liner foreman named Ermon Solon Stidham. Prior to his employment by defendant, Stidham was employed to operate the paver utilizing plaintiff's patented longitudinal strip placing apparatus on the Feather River reach paved by Morrison-Knudsen. This apparatus was removed from the paver at the completion of the Morrison-Knudsen job. When defendant started paving the San Luis reach, defendant, with the assistance of Stidham, replaced plaintiff's patented apparatus with its own infringing apparatus.

16. All of the elements or their exact equivalents of Claims 1, 2 and 5 of the patent in suit were present in defendant's longitudinal machine and defendant's longitudinal machine does the same work in substantially the same way and accomplishes substantially the same result as the combination recited in Claims 1, 2 and 5. Accordingly, Claims 1, 2 and 5 are infringed by defendant's longitudinal machine.

17. During at least part of its use by defendant, all of the elements or their exact equivalents of Claims 1 and 3 of the patent in suit were present in defendant's San Luis transverse machine. There was a conflict in the testimony as to the location of the discharge portion of the insert tube relative to the downwardly and rearwardly directed portion of the gathering pan in defendant's San Luis transverse machine. Additionally, defendant's drawings Exhibit Nos. E and F are inconsistent in the showing of such tube discharge portion. The witness Stidham located the discharge portion of the tube below the downwardly and rearwardly directed portion of defendant's gathering pan. To the extent that defendant's San Luis transverse machine was utilized with the discharge portion of the tube located in accordance with Stidham's testimony, Claims 1 and 3 were infringed by such machine. The fact that defendant termed its "smoothing element" as used in the patent claims a "gathering pan" does not avoid infringement. The fact that defendant's utilization of separate so-called "gathering pans" and "smoothing pans" may be an improvement over the single smoothing element shown in the patent in suit does not avoid infringement.

18. All of the elements or their exact equivalents of Claims 1 and 3 of the patent in suit were present in defendant's Buttonwillow transverse machine. Accordingly, this machine infringes Claims 1 and 3 of the patent in suit. The fact that defendant termed its "smoothing element" as used in the patent claims a "gathering pan" does not avoid infringement. The fact that de-

fendant's utilization of so-called "gathering pans" and "smoothing pans" may be an improvement over the single smoothing element shown in the patent in suit does not avoid infringement. Additionally, defendant's use of guide fingers rather than a guide tube does not avoid infringement even should such guide fingers constitute an improvement over the guide tube shown in the patent in suit.

19. The Court has considered defendant's defense of public use and anticipation under 35 U.S.C. § 102(b). Defendant's contention that the publication of defendant's Exhibit No. AA anticipates the invention of the patent in suit cannot be sustained because such publication does not disclose the patented invention. Defendant's contention that plaintiff's first Livermore test was a public use cannot be sustained because according to defendant's witness, Richard Smith, the discharge portion of the tube was not located as recited in the patent claims, nor was there any clear evidence that the tube was vibrated to effect consolidation of the concrete during this test. Additionally, plaintiff established that it was in good faith experimenting to perfect or test the patented invention at Livermore. The witness, Lewis Tuthill, clearly testified that the first Livermore use was experimental. Finally, the fact that the results of the first Livermore test were unsatisfactory corroborates the testimony of Richard Smith that the patented apparatus was not in fact utilized during the first Livermore test.

20. Defendant alleged failure of the patent specification and claims to meet the requirements of particularity set forth in 35 U.S.C. § 112. However, defendant did not introduce any evidence in support of such defense.

21. Defendant failed to establish a file wrapper estoppel.

22. Defendant failed to establish its defense of misuse of the patent in suit. The uncontradicted testimony of plaintiff's president, Dr. Worson, established that users of the patented apparatus

were not required to purchase CONSTOP strip material from plaintiff as a condition of using the patented apparatus. Instead, the contractors specifically requested the complete package of the patented apparatus, the CONSTOP strip material and engineering supervision in order that they could bid a job knowing their per-foot cost of installed CONSTOP material. This arrangement was also desired by the contractors because they were then confident that the CONSTOP material would be properly installed within the concrete.

■ 23. The Court finds that the presumption of validity set forth in 35 U.S.C. § 282 attaches to the patent in suit, even though the Patent Examiner during prosecution of the patent did not cite all of the prior art patents relied upon by defendant in attempting to invalidate the patent. The Patent Examiner was made aware of the existence of the most pertinent of the non-cited prior art patents by means of a Petition To Make Special filed by plaintiff during prosecution of the patent in suit. The Guntert patent relied upon by defendant was examined concurrently with the patent in suit by the same Patent Examiner. It is reasonable to assume that the Patent Examiner properly performed his administrative duties and therefor considered each of the patents listed by the plaintiff in its Petition To Make Special, as well as the Guntert patent during the prosecution of the patent in suit. As to the Boyle patent relied upon by defendant, the Court finds that this patent would not inform one skilled in the paving art of any need to vibrate the tubes shown in Boyle, since such vibration would make it difficult for the workmen to couple new pipes onto the embedded pipes. Also, the speed at which Boyle's paver moved could not cause his hopper to exert any appreciable downward pressure on the concrete.

24. On or about October 12, 1966, defendant was formally advised by plaintiff's attorneys of the issuance of the patent in suit.

25. Plaintiff was damaged by defendant's acts of infringement.

26. Any conclusion of law hereinafter recited which should be a Finding of Fact is hereby adopted as such.

CONCLUSIONS OF LAW

From the foregoing facts, the Court makes the following conclusions of law:

1. This Court has jurisdiction of the parties and the subject matter of this action.

2. Plaintiff is the owner of the entire right, title and interest in and to Patent No. 3,274,906 in suit.

■ 3. Claims 1, 2, 3 and 5 of the patent in suit meet all of the requirements of validity including those set forth in 35 U.S.C. §§ 101, 102 and 103. The remaining Claim 4 of the patent in suit is not in issue and was not considered by this Court.

4. With respect to 35 U.S.C. § 103, the Court is aware of the special strictness to be applied in determining the patentability of mechanical combinations of old elements as expressed by the Court of Appeals for the Ninth Circuit, for example, in Hensley Equipment Co. v. Esco Corp., 375 F.2d 432 (1967), and by the Supreme Court in Anderson's-Black Rock, Inc. v. Pavement Salvage Co., 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969). As set forth in Findings of Fact 11 and 12, the invention of the patent in suit essentially comprises a smoothing element having a downwardly and rearwardly directed portion which forces concrete downwardly as the apparatus moves forwardly, a guide tube having its discharge portion spaced immediately below the downwardly and rearwardly directed portion of the smoothing element, and vibration means for vibrating the smoothing pan and the tube. Separately, these three basic elements were old at the time the patented invention was made. In none of the prior art patents, however, was the discharge portion of the vibrating guide tube positioned immediately below the downwardly and rearwardly directed por-

tion of the smoothing element. Instead, in the prior art, the tube is located either forwardly or rearwardly of a downwardly and rearwardly directed portion of the smoothing element. The new result of eliminating trapped air from underneath the horizontal wings of the cruciform insert material, therefor producing a watertight joint, is achieved only when the three basic elements are interpositioned as recited in the claims of the patent in suit. The combination of claim elements of the patent in suit results in an effect greater than the sum of the effects of the claim elements taken separately so as to provide a synergistic result (Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950)).

5. Further, with respect to 35 U.S.C. § 103, the Court has also tested the patent claims for obviousness as directed by the Supreme Court in Graham et al v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) and other cases. As to the basic factual inquiries set forth in Graham, the Court has considered the scope and content of the prior art, the differences between the prior art and the claims at issue, and the level of ordinary skill in the concrete paving art at the time the invention was made. The level of ordinary skill in this art at the time of the invention was of a high degree, as indicated by the complicated nature of the prior art patents. Despite the fact that those skilled in the concrete paving art possessed a high degree of skill, such persons failed to solve the problem of eliminating entrapped air from underneath insert strips prior to the time the inventors made the invention of the patent in suit. The Court also reviewed the secondary factual considerations referred to in Graham. Such review indicated: the patented apparatus achieved immediate commercial success; the patented apparatus solved a long-felt but previously unsolved need; others in the concrete paving trade failed to solve such problem; a long and expensive period of experimentation was required by the patentees to solve the problem; and finally defendant copied the patented apparatus rather than the prior art. Taking all of these factual considerations into consideration and strictly observing the requirements of Graham, the Court concludes that the differences between the claimed subject matter and the prior art would not have been obvious at the time the invention was made to a person having ordinary skill in the concrete paving art.

6. Defendant's longitudinal machine infringes Claims 1, 2 and 5 of the patent in suit.

7. Defendant's San Luis transverse machine infringes Claims 1 and 3 of the patent in suit to the extent such machine was utilized with the discharge portion of the insert laying tube positioned immediately below a downwardly and rearwardly directed portion of the so-called "gathering pan" of said machine.

8. Defendant's Buttonwillow transverse machine infringes Claims 1 and 3 of the patent in suit.

9. Defendant is to take nothing by its counterclaim.

10. Plaintiff is not entitled to an award of attorneys' fees from defendant.

11. Plaintiff is entitled to an award of damages adequate to compensate plaintiff for its damages for defendant's acts of infringement under 35 U.S.C. § 284. Such damages are to be limited to the amount assessed and this Court will not increase damages over the amount assessed.

12. The issue of damages is to be referred for hearing to a Master under Rule 53 of the Federal Rules of Civil Procedure, with defendant paying the Master's compensation.

13. Plaintiff is to recover from defendant its costs in the amount of $2,-527.69 as taxed by the Clerk of the Court on February 2, 1970.

14. Any Finding of Fact hereinbefore recited which should be a Conclusion of Law is hereby adopted as such.