382 F.Supp. 1030 (1974)
ROPAT CORPORATION, Plaintiff,
v.
WEST BEND COMPANY, Defendant.
No. 74 C 207.
United States District Court, N. D. Illinois, E. D.
July 31, 1974.
*1031 Richard R. Trexler, Olson, Trexler, Wolters, Bushnell & Fosse, Ltd., Chicago, Ill., for plaintiff.
William Marshall Lee and Thomas E. Smith, Lee & Smith, Chicago, Ill., and Paul R. Wylie, Jr., Los Angeles, Cal., for defendant.

MEMORANDUM OPINION AND ORDER
McLAREN, District Judge.
This matter is before the Court on the motion of the defendant, West Bend Company, for summary judgment. For the reasons set forth below, the motion is denied.
This is a patent infringement action brought by the plaintiff, Ropat Corporation, for infringement of U.S. Letters Patent No. 3,611,910 (Hughes or '910) issued on October 12, 1971 to John S. Hughes. The Hughes patent discloses what has become a familiar sight in the homes of our nation, a corn popper with a transparent cover which acts as a serving bowl when the popper is inverted and the base is removed. The defendant asserts that claims 2, 7, 8 and 9 of the '910 patent are invalid under 35 U.S.C. § 102(b). That section provides:
"A person shall be entitled to a patent unless
* * * * * *
"(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, . . ."
The defendant asserts that U.S. Patent No. 1,380,579 (Neff or '579), issued on June 7, 1921 to Abner Neff, clearly anticipates the Hughes patent, rendering it invalid. For purposes of this motion only, defendant concedes that plaintiff is the owner of the patent.

I.
The abstract of the Hughes patent describes the invention and its purpose as follows:
"Corn is popped in a shallow base covered by a substantially larger dome so that the popped corn rises into the dome, and the dome is constructed so that the dome and the base can be inverted to rest the popper on the dome for separating the base from the dome and serving the popped corn in the dome. The dome is preferably transparent and removably interlocked with *1032 the base which preferably contains an electric heater."
The device has the following appearance:

*1033 Claim 2 describes a corn popper comprising:
"a. a base;
"b. means for supporting said base in popping position on a flat surface;
"c. a pan arranged in said base for containing unpopped kernels of popcorn, when said base is in said popping position;
"d. heating means arranged in said base for heating said pan to pop said kernels;
"e. a single piece dome separably supported on said base over said pan when said base is in said popping position;
"f. the inside volume of said pan being substantially less than the volume of a full charge of popped corn for said popper;
"g. the inside volume of said dome being several times the inside volume of said pan so that said popped corn rises into said dome; and
"h. the uppermost surface of said dome in said popping position being formed with at least three substantially spaced points lying approximately in a plane parallel with said flat surface so that said dome stably supports itself and said base on a flat surface in a position inverted from said popping position for removal of said base from said dome and serving of said popped corn in said dome."
Claim 7, which is dependent upon Claim 2, describes the uppermost surface of the dome as being flat. Claim 8, which is also dependent upon Claim 2, describes handles arranged for inverting the dome and base together. Claim 9 describes the following:
"A corn popper comprising a shallow cooking vessel for receiving popping corn and cooking oil in which said corn is popped, electric heating means mounted in heat exchange relation with the exterior of said vessel, housing and stand means for supporting said vessel in an upright position, said housing insulating said heating means from a surface on which said popper is supported, an enlarged cover for said vessel having a mouth defined by the downwardly extending walls thereof, said cover being supported with said mouth superimposed over said vessel, said cover having a volume substantially greater than the volume of said vessel, and handle means for retaining said vessel and cover in assembled relation and for inverting said vessel and cover as a unit, said cover having a stand permitting it to rest in an inverted position whereby the cover serves as a container and the vessel serves as a cover."
Thus, the key features of the patent are an enlarged dome covering a shallow popping pan (this allows the popcorn to rise into the dome); an ability to observe the corn popping through utilization of a transparent dome (this allows the cook to know when the process is completed); the dome and pan can be inverted together and stand (this prevents the corn from burning); and the dome can be used as a serving bowl.
The Neff patent also discloses a corn popper. It consists of a shallow base pan which is covered by a removable dome-shaped cage made of fine wire netting. The pan is heated by an electrical heating grid placed below it. The purpose of the cage is to completely enclose the popper and it can be removed either to allow removal of the popcorn or to use the base pan for other operations.[1]

II.
The Court is first faced with a preliminary question as to whether the presumption of validity should apply to the Hughes patent. As a general principle, an issued patent is presumed valid. 35 U.S.C. § 282; Copease Mfg. Co. v. American Photocopy Equipment Co., 298 *1034 F.2d 772 (7th Cir. 1961). However, where a pertinent prior art patent exists and was not brought to the attention of the Patent Office, the presumption of validity does not exist. See, e.g., Fredman v. Harris-Hub Co., 442 F.2d 210, 214 n. 10 (7th Cir. 1971). Even one prior art reference not before the Patent Office can overcome the presumption. See T. P. Laboratories, Inc. v. Huge, 371 F.2d 231, 234 (7th Cir. 1966).
Two inquiries must be made. First, the question exists as to whether or not the anticipating patent is pertinent. The defendant, for purposes of this motion, assumes that no other single prior art reference includes all of the elements of claims 2, 7, 8 and 9 of the Hughes patent. The Court believes that Neff is pertinent because it sets forth an electric corn popper which has a removable cage with an observability feature.[2] A patent is pertinent where the key features are similar. See Appleton Elec. Co. v. Efengee Elec. Supply Co., 412 F.2d 579, 581 n.4 (7th Cir. 1969). As Neff has many key features present in Hughes, it is pertinent.
The second inquiry is whether or not Neff was considered by the Patent Office. It is not in dispute that Neff was not originally referred to in the patent application, nor is Neff a cited reference by the Patent Office. Neff was listed in a preliminary amendment filed on January 17, 1966 as a patent which "[was] selected as most representative of the state of the cornpopper art." Neff is not cited by name, only by number, and is in the middle of a list of 23 patents. The file wrapper history shows a check mark ("√") next to the Neff reference.
Several courts have held that limited disclosure is not to be equated with consideration by the Patent Office. In Kaiser Inds. Corp. v. McLouth Steel Corp., 400 F.2d 36 (6th Cir. 1968), where the sole disclosure of a prior patent had been in affidavits filed two weeks prior to issuance, the court stated: "Such an off-hand reference does not amount to Patent Office consideration of the prior art patent." Id. at 43 n. 6. See also T. P. Labs, Inc. v. Huge, 371 F.2d 231 (7th Cir. 1966) (patent was listed in one application but not in another). One court, however, has held that patents cited in a "Petition to Make Special" could be assumed to have been considered by the Patent Examiner. See Edoco Technical Products, Inc. v. Peter Kiewit Sons' Co., 313 F.Supp. 1081 (C.D.Cal. 1970).[3]
*1035 In Lundy Electronics & Systems, Inc. v. Optical Recognition Systems, Inc., 362 F.Supp. 130 (E.D.Va.1973),[4] the court was faced with a situation in which the plaintiff had filed a list of references in a preliminary amendment and a pertinent prior art patent was not cited by the Examiner. The court determined that the question of the presumption to be given plaintiff depended upon the pertinency of the patent. Id. at 142. In that case the parties agreed that the non-cited patent was more pertinent and the court held that the presumption was weakened and it would examine the patent's validity independently.
In the instant case, the Court believes that the presumption of validity has been weakened by the Patent Office's failure to cite Neff, and as Neff is highly pertinent, the presumption will not be given its usual weight.[5]

III.
The next issue is the appropriateness of summary judgment. F.R.Civ.P. 56 provides, inter alia, that summary judgment should not be granted if genuine issues of material fact exist. Judge Frank, in discussing the role of summary judgment in patent cases, stated:
"Summary judgment represents a most useful legal invention to save time and expense, by the avoidance of a trial when there exist no material fact-issues. It may well be that, in a patent case, a judge should exercise unusual caution in granting a summary judgment. But there are patent cases where it would be an absurd waste of time and effort to deny such a judgment. This is such a case.
"In many a patent suit, there arise issues of fact as to which the testimony of expert witnesses may be important. Then the credibility of those witnesses is crucial, and it would be erroneous, by a summary judgment, to deprive either party of a `live trial' at which the trial court could observe the witnesses' demeanor in evaluating their testimony. There was no such issue here. The prior art and the patent claims are, without expert aid, easily understandable by anyone of the most modest intelligence. * * *"
Vermont Structural Slate Co., Inc. v. Tatko Brothers Co., Inc., 233 F.2d 9, 10 (2d Cir.) (footnotes omitted), cert. denied, 352 U.S. 917, 77 S.Ct. 216, 1 L.Ed. 2d 123 (1956). See also Appleton Electric Co. v. Efengee Electrical Supply Co., 300 F.Supp. 296 (N.D.Ill.1968), aff'd, 412 F.2d 579 (7th Cir. 1969); C-Thru Products, Inc. v. Uniflex, Inc., 397 F.2d 952 (2d Cir. 1968); Monaplastics, Inc. v. Caldor, Inc., 378 F.2d 20 (2d Cir. 1967); American Tube & Controls, Inc. v. General Fittings Co., 407 F.2d 1291 (1st Cir. 1969).[6] The important inquiries are related to the claims of the patent; to what extent they are reflected in Neff, and the standards by which the patent must be judged. It is therefore necessary at this point to discuss the *1036 standards the Court should apply in determining if there has been anticipation.

IV.
Anticipation is a fairly technical and strict defense. See Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc., 436 F. 2d 1180, 1182-1183 (7th Cir. 1971). As a rule, anticipation and § 102(b) require that "all of the elements of a patented device or their equivalents must be found in a single prior device. . . . [I]t is sufficient if the general aspects are the same and the difference in minor matters is only such as would suggest itself to one of ordinary skill in the art." Amphenol Corp. v. General Time Corp., 397 F.2d 431, 438 (7th Cir. 1968) (citations omitted).
This means that, except for insubstantial differences, the prior patent contains all of the same elements operating in the same fashion to perform an identical function. See Popeil Bros., Inc. v. Schick Electric, Inc., 494 F.2d 162 (7th Cir. 1974); see also, Shelco, Inc. v. Dow Chemical Co., 466 F.2d 613 (7th Cir. 1972); Delta Mfg. Co. v. E. L. Essley Machinery Co., 153 F.2d 905 (7th Cir. 1946). It is also clear that one may not adopt an old device and merely identify a function it was capable of performing. See, e. g., General Electric Co. v. Jewel Incandescent Lamp Co., 326 U.S. 242, 247-249, 66 S.Ct. 81, 90 L.Ed. 43 (1945); Amphenol Corp. v. General Time Corp., 275 F.Supp. 903, 907 (N.D. Ill.1967). The important factor is the novelty of the invention.[7] Furthermore, in analyzing the specifications and drawings, it is necessary that the Court not give them an application or construction which is unnatural, forced, or contrary to their original use and purpose. See, e. g., National Slug Rejectors v. A. B. T. Mfg. Corp., 164 F.2d 333, 337 (7th Cir. 1947). It becomes necessary at this point to evaluate the two patents and compare their disclosures.
As to Claim 2, defendant contends that each element in Hughes is present in Neff. Both have a base. Hughes next requires a "means to support [the] base in popping position on a flat surface." In Figures 6-8 of Neff, the handle to hold the pan extends downward. This is evident from both the cross-section view and the aerial view (Figure 7  from which the handle cannot be seen). Plaintiff contends that this difference defeats anticipation. However, in figures 1-3, the handle extends outward, not downward, and a flat base is present. In his disclosure Neff indicates that the handles can be substituted and nothing in the patent indicates that the handle position is vital to either of the embodiments (figures 1 or 6). While Hughes' drawings indicate a tripod leg system as the means, the claim does not require it and Neff's flat base can serve as a means of support.
*1037 The plaintiff also contends that Neff does not provide that the inside volume of the pan is substantially less than the volume of a full charge of popped corn. A view of the Neff patent shows that the cage is substantially larger than the pan. It appears that the one purpose of having a wire cage is to observe the corn popping. If it were expected that the pop corn would not overflow the pan, a wire plate-like structure could be used. The dome is larger and it is clear that one purpose is to retain the pop corn, which would indicate that the pop corn would overflow the pan. The pan is also described as being a shallow tray (page 1, line 70). Plaintiff contends that Neff does not disclose that the volume of the dome is such that the popped corn arises within the pan. It contends that the Neff cage merely keeps the kernels from flying around. However, if enough corn is put into the Neff base, the cage can be filled with pop corn as the process goes on. Thus, this aspect of the dome's function is present in Neff.
Plaintiff also contends that the foraminous cage disclosed in Neff does not meet the requirements of claim 2(h), which requires that the uppermost surface of the dome is formed by at least three points (which constitute a plane) which lie parallel to the flat surface of the base, so that the dome supports itself and the base on a flat surface in a position inverted from the popping position. This allows for the removal of the base from the dome and the serving of the corn in the dome. Plaintiff first contends that the cage is not able to act as a server because uncooked kernals, salt and butter would seep through the foraminous cage. Defendant responds to this with the contention that the claim, by which plaintiff is bound, only provides for the serving of popped corn and does not mention butter or salt. This does not give to plaintiff a reasonable reading of the serving function. The Court believes, however, that a fine wire netting could be (and has been) used as a serving utensil, albeit somewhat messy, so anticipation is present on this point.
However, the claim also requires that the dome be constructed so that it can support itself and the base on a flat surface in the inverted position. This is a function of the dome; however, it also has implications as to the dome's construction and structure. Nothing in Neff provides for the cage to be of such construction so that it can support itself and the base in an inverted position and allow for serving. Both embodiments of Neff negate this ability, since figure 1 has the handle at the side which would create an imbalance and in figure 6 the handle on the bottom would not allow the device to stand in an inverted position. Further, the construction of the cage is made up of a fine wire net over a wire frame, which might not have the requisite strength. Nowhere in Neff is this ability of the structure disclosed. While the Neff cage might be usable for serving, or is removable, or has an observability feature, its structure is not the same nor does it serve the same purposes as Hughes. The structure does not allow the combination of operations to be done by it that the Hughes claims require. See, e. g., National Slug Rejectors v. A. B. T. Mfg. Corp., supra; Delta Mfg. Co. v. E. L. Essley Mach. Co., supra. Since this ability to stand in an inverted position is important, anticipation of claim 2 is not present.
Since claims 7 and 8 are dependent on claim 2, anticipation is not present there. Since claim 9 requires the dome to have a structure which can do the functions claim 2 requires, anticipation is not present as to it for the same reasons as stated above. The question of obviousness, of course, remains open. But for the reasons stated, the motion for summary judgment must be denied.
It is so ordered.
Appendix to follow

*1038 APPENDIX 1
 *1039 *1040 *1041 *1042 *1043

NOTES
[1] See Appendix 1 for complete text of the Neff patent.
[2] The prior art references when considering anticipation do not appear to be more pertinent than Neff. The Kimmel patent, No. 1,974,360, discloses a portable electric heating utensil which might be used for popcorn. The Barnard patent, No. 1,642,531, discloses a utensil for popping corn which is primarily a kettle over a heating element and which has a stirring means. The Richheimer patent, No. 2,105,201, discloses a locking cover for pots. The Serenberg patent, No. 1,992,843 discloses an electrical cooking utensil which is a pot heated through an electrical heating base. The Bruening patent, No. 2,364,125, discloses a container made up to two connected bowls. The Beckenmeyer patent, No. 2,522,085, discloses a cornpopper, made up of a serving pan and handle which fits into the heating base. The Curry patent, No. 2,650,736, discloses a complete cornpopper and server made in the form of truncated cones. This system does not have its own source of heat. The Meier patent, No. 2,659,222, discloses a compotier, or covered dish. The Howe patent, No. 2,661,862, discloses a closure assembly for containers. The Burreson patent, No. 2,901,587, discloses an electric cornpopper with a container and thermostatic temperature control. The Kueser patent, No. 2,923,803, discloses an automatic electric cornpopper with temperature control.
[3] A "Petition to Make Special" is, however, a fairly unique procedure because the Patent Office agrees to expedite the examination of the patent. See Rules of Practice in Patent Cases, § 708.02 (1970), reprinted in 6 Dellers', Walker on Patents, Appendix to Chapter XVI, at 365 (2d ed. 1972). Also, the applicant must affirm that a search was made, and provide copies of cited references and a detailed discussion of the references. See id. at 366 (§ 708.02  Special Examining Procedure for Certain New Applications  Accelerated Examination (c) (d) and (e)).
[4] Defendant has informed the Court that this case was affirmed by the Fourth Circuit Court of Appeals on March 25, 1974. See Lundy Electronics & Systems, Inc. v. Optical Recognition Systems, Inc., 493 F.2d 1222 (4th Cir. 1974).
[5] It may seem circuitous to state that if the patent is pertinent the presumption will be reduced because the determination of pertinency depends to some extent upon a determination of the merits. However, the determination of pertinency does not depend solely on the anticipatory nature of the patent, nor are the same tests necessarily relied upon, nor are the same weights applied in the determination.
[6] It is interesting to note that in most of the above cited cases, the patent was being attacked as invalid under 35 U.S.C. § 103, or as being "obvious." The test of obviousness encompasses a broader range of questions than anticipation under § 102. See, generally, Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). However, this does not mean that this case should be determined on anything other than its own facts.
[7] In General Electric Co. v. Jewel Incandescent Lamp Co., 326 U.S. 242, 66 S.Ct. 81, 90 L.Ed. 43 (1945), the Court found that a patent for an electric light bulb, frosted on the interior with rounded crevices had been anticipated by one with angular crevices or pits. In Popeil Bros., Inc. v. Schick Electric, Inc., 494 F.2d 162 (7th Cir. 1974), the court held that hair curlers heated by steam had been anticipated by hair curlers heated by boiling water. In Shelco, Inc. v. Dow Chemical Co., 466 F.2d 613 (7th Cir. 1972), the court held that minor differences in the amounts of certain types of chemicals used in oven cleaners were not sufficiently important to avoid anticipation. In Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc., 436 F.2d 1180 (7th Cir. 1971), the court held that nestable, thinwall plastic containers, primarily used in automatic dispensing machines, were not anticipated by other types of paper cups. In Delta Mfg. Co. v. E. L. Essley Machinery Co., 135 F.2d 905 (7th Cir. 1946), the court held that a safety shield for grinding machines was not anticipated by either a cover for a cutting machine or device for illuminating a magnifying glass. In National Slug Rejectors v. A. B. T. Mfg. Corp., 164 F.2d 333 (7th Cir. 1947), the court found that a device which ejected proper size underweight coins was not anticipated by a device which ejected improper size coins.